Charles E. NICHOLS, Plaintiff-Respondent,

v.

## AMERICAN EMPLOYERS INSURANCE COMPANY and Commercial Union Insurance Co., Defendants-Appellants.

Court of Appeals

*No. 86–1821. Argued May 27, 1987.—Decided July 22, 1987.*

(Also reported in 412 N.W.2d 547.)

On behalf of the defendants-appellants there were briefs and oral argument by *Alice M. Shuman* of *Albert, Jude & Van Remmen, S.C.,* of Racine.

On behalf of the plaintiff-respondent there was a brief and oral argument by *Charles H. Constantine* of *Constantine, Christensen, Krohn & Kerscher, S.C.,* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. The issue is whether the insurer in this case had a duty to defend its insured in a sexual harassment action before the Equal Rights Division of the Department of Industry, Labor and Human Relations. The trial court agreed with the insured that since the insurance policy provided for coverage against defamation claims and since a defamatory statement was arguably subsumed within the sexual harassment action, there was a duty to defend. We hold that this insurer was not required to defend where it was not bound to indemnify should the injured party prevail upon her allegations. We therefore reverse the trial court.

The facts are uncontroverted. Constance Catterall filed two complaints with DILHR alleging that Nichols Motors had discriminated against her on the basis of sex in violation of sec. 111.31 through sec. 111.395, Stats. The Equal Rights Division of the Department

found probable cause of sex discrimination. Nearly two years passed before hearings were held on the complaints. Shortly before the hearings, Nichols tendered the defense to its comprehensive general liability insurer, American Employers Insurance Company and its umbrella carrier, Commercial Union Insurance Company. Included with the tender was information from which it could be deduced that certain of Catterall's claims included arguably defamatory statements by fellow employees. Both insurers denied coverage. A hearing ensued on the sexual harassment claim without the insurers' participation. Prior to the rendering of a formal decision, the sexual harassment claim was settled and Nichols agreed to pay Catterall $25,000. Nichols then sued the insurers for breach of their duty to defend. After motions by both parties for summary judgment, the trial court held for the insured but did not decide the damages question. We accepted the insurer's petition to review a nonfinal order. Further facts will be stated when necessary.

■
Certain legal principles compel us to reverse. The first is stated in *Sola Basic Industries, Inc. v. United States Fidelity & Guar. Co.,* 90 Wis. 2d 641, 280 N.W.2d 211 (1979). The supreme court wrote:

> To determine whether an insurer is obligated to assume the defense of a third-party suit, it is necessary to determine whether the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy.

*Id.* at 646, 280 N.W.2d at 213. We have examined the allegations in Catterall's complaints filed with DILHR. Nowhere does she relate any statements alleging defamation. In fact, the complaints are devoid

of any statements that could be considered an allegation of defamation. This is understandable because she was not seeking damages for defamation of her character. She was seeking reinstatement of her job, back wages and a halt to Nichols' discrimination practices. *Sola Basic* teaches that the obligation to defend is to be determined by the allegations in the complaint. Since the sexual harassment complaints made no defamatory allegations, a basic tenet of *Sola Basic* is missing.

A corollary principle also compels reversal. The supreme court in *Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 148 N.W.2d 103 (1967), stated:

> [T]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.

*Id.* at 558, 148 N.W.2d at 106. No compensatory relief for defamation is available to an employee in a sexual harassment action. Remedies for violations of the Fair Employment Act are statutory and are exclusively available through DILHR proceedings. *Bachand v. Connecticut General Life Ins. Co.,* 101 Wis. 2d 617, 623–24, 305 N.W.2d 149, 152 (Ct. App. 1981). The supreme court has held that damages for harm to reputation are not available from either a DILHR proceeding or through a private cause of action for violations of the Fair Employment Act. *Yanta v. Montgomery Ward & Co., Inc.,* 66 Wis. 2d 53, 62–63, 224 N.W.2d 389, 394 (1974); *see also Bachand,* 101 Wis. 2d at 629, 305 N.W.2d at 154.

■

Therefore, even if the sexual harassment complaints had related some defamatory matter, there could be no damages awarded as a result of the defamation. *Grieb* explains that the duty to defend is equated with the duty to pay possible damages. Since there can be no damages *for* defamation, there can be no duty to defend.

■

Nichols attempts to circumvent the *Sola Basic* and *Grieb* maxims by directing our attention to the language of the policies in question. Acknowledging that Catterall's complaints did not contain any defamatory matter, Nichols points out that when it sent its tender of defense to the insurers, it also sent a copy of the hearing examiner's initial report quoting Nichols' employees' alleged challenges to Catterall's competence with a sexist, vulgar term. From this, Nichols concludes that although the complaint did not give the insurers notice, Nichols himself *did* give notice that part of the sexual harassment grievance contained an allegation of defamation. Nichols argues that the insurance policies do not require that notice only came from the four corners of a "complaint" by a third party against the insured. Rather, the underlying policies require that:

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company.

748

Nichols concludes that the insurance policies themselves require the insurer to consider not only the complaint, but any other relevant information in determining whether a duty to defend exists.

We disagree. Nichols confuses notice and proof of loss as opposed to notice of suit. The insurance clause quoted by Nichols is a notice and proof of loss provision. The purpose of a provision for notice and proof of loss is to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay. 13A G Couch, Cyclopedia of Insurance Law § 49:2 (2d ed. 1982).

■

The purpose of a notice of suit is entirely different. The duty to defend exists independent of the duty to investigate. Indeed, a duty to defend does not even arise until there has been a suit initiated. *See Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1183 (7th Cir.), *cert. denied,* 449 U.S. 1033 (1980). As *Sola Basic* points out, once the suit is initiated, the insurer must make a determination of whether it is obligated to defend the suit. The determination is made based upon the allegations in the third party's complaints. We conclude that Nichols' reliance upon the notice and proof of loss provision in the policy is misplaced.

■

Addressing the corollary maxim that an insurer should not be required to defend where it is not bound to indemnify should the injured party prevail, Nichols again turns to the policy language. Nichols asserts that Catterall's claims gave rise to a "personal injury" claim as that term is referred to under the terms of

the policies. The American policy, for instance, defines personal injury as an injury:

*arising out of ...*
(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material.

The Commercial policy defines personal injury as, among other things:

libel, slander, [or] defamation ... which occurs during the policy period.

Nichols claims neither policy requires that a civil suit *for* defamation, libel or slander be commenced before a claim for personal injury arises. Rather, both policies simply require that the facts within the claim be based upon a libel, slander or defamation. If that happens, coverage exists. Nichols concludes that, in this case, the claim for personal injury under the terms of the policies arose out of a slander which gave rise to a charge of sexual harassment.

We again disagree. Contrary to Nichols' assertion, we read the insurance policy as contemplating defense of defamation suits, not suits claiming damages where a defamatory statement may be involved. The American policy, for instance, indicates that the insurer will defend "any suit" seeking damages "on account of" libel or slander. The policy does not say that it will defend actions seeking damages other than for defamation but which have some defamatory matter contained within the allegation. Were we to adopt Nichols' interpretation, then this insurer would be obliged to defend such actions as child custody suits, for instance, where one party has allegedly made a defamatory statement about the other. In such a case, although one party would not be claiming damages

resulting from defamation, but rather would be seeking custody of the child, the insurance company would still be obliged to defend. This is because the defamatory matter would be "subsumed" within the custody fight.

Insurance policies should be given a reasonable interpretation and not one which leads to absurd results. *Olguin v. Allstate Ins. Co.,* 71 Wis. 2d 160, 165, 237 N.W.2d 694, 697 (1976). We will not adopt Nichols' position here as it would lead to absurd results.

We conclude that because the nature of the claim was not a defamation action by the third party, the simple fact that a defamatory statement is part of a proceeding does not bring the case within the insurance coverage. We further conclude that since there is no ultimate duty to indemnify, the insurer here had no duty to defend. The case is reversed and remanded with directions to dismiss the suit against the insurers.

*By the Court.*—Order reversed and cause remanded with directions.