PROFESSIONAL OFFICE BUILDINGS, INC., a Wisconsin corporation, Eleanor Touchett, Personal Representative of the Estate of A.L. Touchett, as assignee of Touche Leasing Corporation, a Delaware corporation, James C. George and Audrey George, individually and as assignees of Professional Office Buildings, Inc., Touche Leasing Corporation, and Eleanor Touchett, Personal Representative of the Estate of A.L. Touchett, Plaintiffs-Appellants,

v.

ROYAL INDEMNITY COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 87–2078. Submitted on briefs April 22, 1988.—Decided June 23, 1988.*

(Also reported in 427 N.W.2d 427.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Jon P. Axelrod, Ronald R. Ragatz,* and *Paul G. Kent,* of *De Witt, Porter, Huggett, Schumacher & Morgan, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *John H. Schmid, Jr.,* and *Axley Brynelson* of Madison, and *Paul W. Schwarzenbart* of *Lee, Johnson, Kilkelly & Nichol, S.C.,* of counsel, of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Professional Office Buildings, Inc. (POB), and other parties appeal from a summary judgment dismissing their complaint against the Royal Indemnity Company. POB, the owner of two liability policies issued by Royal,[1] sued to obtain coverage for

---

[1]The policies list Touche Leasing Company as the named insured. Touche Leasing, like POB, was a company wholly owned by A.L. Touchett. POB had leased the plane in question to Touche Leasing prior to entering into the lease with K.B.C., Inc. Touchett, POB and Touche Leasing were all named as defendants in the Mississippi action, and all were ultimately found liable to George. All, along with George, are plaintiffs and appellants in this action.

Royal, arguing that there was no coverage for the claimed loss, makes several references to the fact that Touche Leasing, the "named insured" under the policies, had nothing to do with the

its liability to a third party as determined in a Mississippi lawsuit. The issues are: (1) whether an insurer's duty to defend its insured is determined solely by the allegations of the complaint, or whether extrinsic facts may be considered; (2) the appropriate rate of interest to be applied to the Mississippi judgment; and (3) whether the trial court erred in dismissing POB's "bad faith" claim against Royal. We conclude that the allegations of the complaint determine the insurer's duty to defend, and that Royal breached that duty when it refused to defend POB in the Mississippi action. We also conclude that the eight percent interest rate provided in the Mississippi judgment is applicable, even though the judgment was also docketed in Wisconsin, and that the trial court did not err in dismissing the bad faith claim. We therefore affirm in part and reverse in part.

The facts are not in dispute. On December 11, 1972, an airplane owned by POB, a Wisconsin corporation, crashed near Tupelo, Mississippi, seriously and permanently injuring a passenger, James George. At the time of the crash, POB had leased the plane to K.B.C., Inc., another Wisconsin company. K.B.C. was in the business of arranging charter flights and paid POB a portion of the revenue it earned from the charters. George was an employee of a company that had chartered the plane to transport goods from Wisconsin to Mississippi.

lease to K.B.C. or with the operation of the plane at the time of the accident. As will be seen, however, Royal, having breached its duty to defend the Mississippi action, may not now challenge coverage. Indeed, Royal concedes that an insurer who breaches its duty to defend is liable to its insured up to the limits of the policy. Under these circumstances, we do not deem it significant that Touche Leasing, rather than POB, or even K.B.C., was the named insured on the policies.

Two liability policies are at issue: an "Airshield Aircraft Policy" providing $3,000,000 coverage and a "Comprehensive Catastrophe Liability Policy," also called a "Big Shield" policy, which provided $1,000,000 of general liability coverage.

The body of the "Airshield" policy states that it does not apply if "the aircraft is used for any purpose ... for which a charge is made to others." However, there is an "air taxi" endorsement to the policy under which Royal agrees to pay "all sums which the Named Insured shall become legally obligated to pay as damages for bodily injury ... resulting from the Named Insured's negligent operation, maintenance or use of aircraft in 'air transportation' ...."

The "Big Shield" policy protects the insured against damages because of "[p]ersonal [i]njury ... anywhere in the world." While the policy excludes liability resulting from use of aircraft, there is an exception to the exclusion for "liability arising out of operations performed by independent contractors."

George sued POB in Mississippi, claiming that POB was engaged in "operation of aircraft" under Mississippi law and thus was vicariously liable for the pilot's negligence. In Mississippi, anyone who causes or authorizes another to operate an aircraft is deemed to be engaged in the "operation of aircraft" and is liable for the pilot's negligence.[2] A second cause of

---

[2]Mississippi Code Annotated, sec. 61–1–3(j) (1972), provides as follows:

> "Operation of aircraft" or "operate aircraft" means the use of aircraft for the purpose of air navigation, and includes the navigation or piloting of aircraft. *Any person who causes or authorizes the operation of aircraft,* whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, *shall be deemed to be engaged in the*

action contended that POB was liable for negligence as a common carrier, and a third sought punitive damages.

Royal refused to defend the action, denying coverage on grounds that: (1) at the time of the accident, the aircraft was being used for a purpose for which a charge was made to others contrary to the stated declarations of the Airshield policy; and (2) the Big Shield policy did not apply because of the aircraft exclusion.

Prior to trial of the Mississippi action, POB ran out of funds to pay its attorney, and the company's owner, A.L. Touchett, appeared *pro se* at the start of the trial, but put on little, if any, defense. Following trial, the Mississippi court entered judgment against POB for $4,487,249.22. POB's liability was based on the provisions of Mississippi law imputing the negligence of the pilot to all parties authorizing operation of the aircraft. The judgment was later docketed in Wisconsin.

POB then filed this Wisconsin action against Royal, seeking to recover the policy limits on both the Airshield and Big Shield policies. The complaint stated causes of action for damages based on Royal's breach of its duty to defend the Mississippi action, for indemnity under the policies, and for bad faith. George and his wife joined the action as plaintiffs. Royal moved for summary judgment, claiming that there was no coverage under either policy, and POB filed a cross-motion for summary judgment on its complaint. The trial court denied POB's motion and granted Royal's. Judgment dismissing the complaint was entered on October 21, 1987.

*operation of aircraft* within the meaning of the statutes of this state .... (Emphasis added.)

579

■
Because the trial court's rulings—that there was no duty to defend, and no coverage under either policy, and that the bad faith claim was barred by the statute of limitations—involve questions of law only, we review them independently, without deference to the trial court's decision. *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

## I. THE DUTY TO DEFEND

■
Generally, an insurer has the obligation to defend its insured against a lawsuit if the complaint "alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy." *Sola Basic Ind. v. U.S. Fidelity & Guaranty Co.,* 90 Wis. 2d 641, 646, 280 N.W.2d 211, 213 (1979). The trial court, in a thorough, well-written opinion, concluded that its inquiry was not limited to the four corners of the complaint, but that the duty to defend—or the absence thereof—could be determined by looking beyond that document to extrinsic facts known to the insurer.

■
The source of that view is a federal district court case, *American Motorists Ins. Co. v. Trane Co.,* 544 F. Supp. 669, 679 (W.D. Wis. 1982), *aff'd* 718 F.2d 842 (7th Cir. 1983). However well-reasoned that case might be, where Wisconsin Supreme Court precedent—or our own—requires a contrary result, we are bound by that precedent. And that is the case here, for we believe the rule of *Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 148 N.W.2d 103 (1967), and similar cases,

is controlling and compels the determination that the duty to defend is dependent solely on the allegations of the complaint, and that, in this case, the duty was clear. While we believe the federal court's analysis in *American Motorists* is persuasive, we are bound by Wisconsin Supreme Court precedent regardless of the extent of our agreement, or our disagreement, with it. *State ex rel. McCaffrey v. Shanks,* 124 Wis. 2d 216, 221, 369 N.W.2d 743, 747 (Ct. App. 1985).

In *Grieb,* the supreme court held that, in determining the duty to defend, "[i]t is the nature of the claim alleged against the insured which is controlling *even though the suit may be groundless, false or fraudulent." Id.,* 33 Wis. 2d at 558, 148 N.W.2d at 106 (emphasis added). In a later case, *Smith v. State Farm Fire & Cas. Co.,* 127 Wis. 2d 298, 301, 380 N.W.2d 372, 374 (Ct. App. 1985), the underlying action had been settled after extensive discovery had taken place, and the insurer argued that in order to determine its duty to defend the action, "we must go beyond the pleadings" and "look to depositions and other discovery materials, and to the terms of the settlement agreement itself, rather than limit our inquiry to the allegations of the complaint." We rejected the argument, stating that "[t]he rule of *Grieb* has been consistently followed in Wisconsin," citing *Sola Basic, supra,* and *Gerrard Realty Corp. v. American States Ins. Co.,* 89 Wis. 2d 130, 141, 277 N.W.2d 863, 869 (1979). *Smith,* 127 Wis. 2d at 301–02, 380 N.W.2d at 374. We concluded that the insurer's duty to defend was to be "determined by the nature of the claim stated in the ... complaint, despite the availability of later depositions and other discovery materials in the action ...." *Id.* at 299, 380 N.W.2d at 373.

Most recently, in *Nichols v. American Employers Ins. Co.,* 140 Wis. 2d 743, 747, 412 N.W.2d 547, 549 (Ct. App. 1987), we noted that *"Sola Basic* [which was based on *Grieb*] teaches that the obligation to defend is to be determined by the allegations in the complaint." In *Nichols,* the insured, Charles Nichols, claimed that his insurer had a duty to defend him in a sexual harassment action brought by one of his employees before the Department of Industry, Labor and Human Relations. Nichols' policy provided coverage for defamation claims, and it was undisputed that the DILHR complaint contained no allegations of defamation. Nichols argued, however, that because the tender of defense he sent to the insurer included a copy of a DILHR hearing examiner's report quoting certain employees under his control as using "sexist, vulgar term[s]" to describe the suing employee, those extraneous facts gave the insurer adequate notice that the claim involved defamation, and therefore the insurer had a duty to defend him in the proceedings. *Id.,* 140 Wis. 2d at 748, 412 N.W.2d at 550. We rejected the argument, concluding that:

> [O]nce the suit is initiated, the insurer must make a determination of whether it is obligated to defend the suit. The determination is made based upon the allegations in the ... complaint[]. We conclude that Nichols' reliance upon the notice and proof of loss ... is misplaced. *Id.* at 749, 412 N.W.2d at 550.

██

The Wisconsin precedent controls, and we are constrained to conclude that Royal's duty to defend the Mississippi action—or the lack of such duty—must be ascertained by reference solely to the allegations of the complaint. And, considering the complaint filed in

the Mississippi action, we are satisfied that the duty existed.

██

The Mississippi complaint alleged that the defendants, including POB and the pilot, were negligent in, among other things, owning, operating, maintaining, and using the aircraft at the time of the crash. The air taxi endorsement to the Airshield policy insured against damages resulting from the "negligent operation, maintenance or use" of the aircraft. As we have said, Wisconsin law holds an insurer to the duty to defend its insured against all actions, even those that may be "groundless, false or fraudulent," as long as "the nature of the claim" is one "for the liability insured against." *Grieb*, 33 Wis. 2d at 557–58, 148 N.W.2d at 106. Any doubts about coverage must be resolved in the insured's favor. *Sola Basic*, 90 Wis. 2d at 646–47, 280 N.W.2d at 214. Here, there is little doubt that the nature of George's claim against POB related to the liability Royal had insured against. As a result, Royal had a duty to defend under the Airshield policy.

██

The Big Shield policy was a general liability policy, and it insured against liability arising out of the operation of aircraft by independent contractors. The Mississippi complaint alleged that K.B.C., POB's lessee, was engaged in the business of providing commercial air taxi service to the public at the time of the accident, and that George, the injured party, was a passenger for hire. It also alleged that POB was in the commercial air taxi business and that it had "caused or authorized" K.B.C. to operate the plane at the time. The allegations give rise to the inference that K.B.C. was operating as an independent contractor at the

time of the crash,[3] and we believe Royal had a duty to defend under the Big Shield policy as well.

██

Royal concedes in its brief that "if an insurer breaches its duty to defend, it is liable up to the policy limits," citing *American Motorists,* the federal district court decision discussed above. In that case, the court, relying on *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1184 (7th Cir.), *cert. denied,* 449 U.S. 1033 (1980) (applying Illinois law), stated that "the insurer which wrongfully refuses to defend is estopped from denying coverage" and is liable to the insured for the amount of the judgment, the costs of defending the suit and any additional damages caused by the insurer's breach of the contract. *American Motorists,* 544 F. Supp. at 689. In contrast to the district court's ruling on the issue of going beyond the allegations of the complaint to ascertain the insurer's duty to defend, no Wisconsin court has considered whether an insurer,

---

[3]Royal argues that, because K.B.C. had been chartered by George's employer, it could only be considered that employer's agent or "independent contractor," not POB's or Touche's, and thus there could be no coverage. However, Royal may not now try coverage. In any event, the policy does not limit or restrict the term "independent contractor" so as to confine it to an agent of the named insured. Indeed, the clause immediately following the "independent contractor" language, discussing liability for injury to employees is restricted to "employee[s] of the insured . . . ." The absence of similar restrictive language in the reference to independent contractors may be said to create an ambiguity as to whether the phrase is general in nature or intended to be limited to independent contractors "of the insured." Resolving that ambiguity in favor of the insured, as we are bound to do, *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985), we reject Royal's argument.

who has breached its duty to defend an insured, may be estopped from later challenging coverage.

We believe such a rule is not only consistent with, but required by, Wisconsin cases such as *Grieb* (where the court stated that "the insurer who declines to defend does so at [its] peril," *id.*, 33 Wis. 2d at 558, 148 N.W.2d at 106), *Nichols*, and *Smith.* We note, too, that courts in other states have, like the *American Motorists* court, held that an improper refusal to defend waives any later challenge to coverage. *See, e.g., Rhodes v. Chicago Ins., A Div. of Interstate Nat.*, 719 F.2d 116, 120 n. 5 (5th Cir. 1983) (applying Texas law); *Ames v. Continental Cas. Co.*, 340 S.E.2d 479, 485 (N.C. App. 1986); *Conanicut Marine v. Ins. Co. of N. America*, 511 A.2d 967, 971 (R.I. 1986).

Royal could have tried coverage prior to undertaking the liability defense. Where coverage is an issue, bifurcated trials are the norm. The insurer may try coverage—generally to the court—first, and if it is found to exist, the liability trial proceeds at a later date. Indeed, "when [a] separate trial on coverage does not precede the trial on liability and damages[,]" the insurer "may need to provide a defense"—sometimes to the extent of "be[ing] required to furnish a free defense to its insured [—] prior to the determination of coverage." *Mowry v. Badger State Mut. Cas.*, 129 Wis. 2d 496, 528–29, 385 N.W.2d 171, 186 (1986). The same is true in Mississippi. Mississippi R. Civ. P. 42(b), permits the court, "in furtherance of convenience," to order a separate trial of any issue, whether or not any party has so moved. *See Christopher v. Brown,* 51 So. 2d 579, 582 (Miss. 1951) (to prevent undue expense or delay, trial court has discretion to determine when and in what cases separate hearings may be had).

We conclude, therefore, that Royal, having breached its duty to defend the Mississippi action, may not now challenge or otherwise litigate the coverage issues. It is liable for the policy limits under the Big Shield policy, and under the air taxi endorsement to the Airshield policy.

## II. INTEREST ON THE MISSISSIPPI JUDGMENT

Both policies provide for payment of "all interest on the entire amount of any judgement ... before the Company has paid or tendered ... that part of the judgement which does not exceed the limit of the Company's liability thereon ...." Royal contends that, should it be held liable, interest on the portion of the Mississippi judgment covered by the policies should run at eight percent—the rate provided in the judgment—rather than the twelve percent allowed on judgments by Wisconsin law. POB argues that the Wisconsin rate applies because the judgment was docketed in Wisconsin, and points to sec. 806.24(2), Stats., which provides that, when docketed here, a foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner."

We do not believe sec. 806.24(2), Stats., compels the result sought by POB. Rather, we agree with Royal that the interest rate provided in the judgment should control. *See Slade v. Slade,* 468 P.2d 627, 631 (N.M. 1970) (rate of interest on Kansas judgment

controlled by Kansas law). We note, too, that to award POB more than is due its Mississippi judgment creditors would constitute a windfall.

## III. THE BAD FAITH CLAIM

POB's complaint also stated a cause of action for Royal's alleged "bad faith" in refusing to defend the action. The trial court ruled that the claim was barred by the statute of limitations, sec. 893.57, Stats., which provides a two-year limitation on bringing actions for intentional torts. The court also held that the bad faith claim failed on its merits because Royal had demonstrated that the question of coverage was at least "fairly debatable," within the meaning of *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978), and related cases.

A "bad faith" cause of action has always been considered an intentional tort. *Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376. The supreme court, in *Warmka v. Hartland Cicero Mut. Ins.,* 136 Wis. 2d 31, 36, 400 N.W.2d 923, 925 (1987), held that, as a result, the two-year limitation provided by sec. 893.57, Stats., applies to such claims. POB argues that *Warmka* is inapplicable for two reasons: (1) the statement was *dictum;* and (2) the case, which was decided after this action had been commenced, "changed" the statute of limitations, and that "change" cannot be applied retroactively. We disagree on both counts.

First, the statement was not *dictum.* The court specifically stated: "We hold that sec. 893.57, Stats., the two-year statute of limitations, governs the intentional tort of bad faith ...." *Warmka,* 136 Wis. 2d at 36, 400 N.W.2d at 925. Even if not decisive of the

587

primary issue in a case, matters taken up and decided by the court which are germane to that issue "are not *dictum,* and are ... judicial act[s] of the court which it will recognize as ... binding decision[s]." *State of Louisiana ex rel. Eaton v. Leis,* 120 Wis. 2d 271, 277, 354 N.W.2d 209, 212 (Ct. App. 1984).

Second, POB's argument that *Warmka* "chang[ed] a statute of limitations [and thus] cannot operate retroactively" is undeveloped and need not be considered further. *Reiman Associates v. R/A Advertising,* 102 Wis. 2d 305, 306 n. 1, 306 N.W.2d 292, 294 (Ct. App. 1981). In any event, we do not consider that *Warmka* changed the law at all. It was a case of first impression, interpreting a statute that was in existence prior to the time POB's cause of action accrued. *Warmka* did not state that it was to be applied prospectively only, and POB simply has not explained how the decision affected its vested rights. The trial court correctly dismissed the bad faith claim.

*By the Court.*—Judgment affirmed in part and reversed in part. Cause remanded with directions to enter an order granting the plaintiffs' motion for summary judgment awarding it the policy limits in both the "Big Shield" and the "air taxi endorsement" of the "Airshield" policy, together with interest at the rate of eight percent from the date of the Mississippi judgment.