HAROLD SAMPSON CHILDREN'S TRUST, a trust maintained for the benefit of Beth Bauer, Jamie L. Sherman, and Kay Yuspeh, and each of them individually as Plaintiffs, and The Beth Bauer Trust, The Jamie L. Sherman Trust and The Kay Yuspeh Trust, Plaintiffs-Respondents,†

v.

The LINDA GALE SAMPSON 1979 TRUST, The Steven J. Sampson 1979 Trust and The Scott A. Sampson 1979 Trust, which are the successors to the B.J. Sampson Children's Trust, a trust maintained for the benefit of Linda Gale Sampson, Scott Sampson, and Steve Sampson, and Sampson Investments, Ann Mandelman, and Nancy Simos, Defendants-Third-Party Plaintiffs-Appellants,

v.

Beth BAUER, Third-Party Defendant.

Court of Appeals

*No. 02–1515. Oral argument May 6, 2003.—Decided June 10, 2003.*

2003 WI App 141

(Also reported in 667 N.W.2d 831.)

† Petition to review granted 10-1-03.

 ██

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Paul S. Medved*, and *Scott R. Halloin* of *Mallery & Zimmerman, S.C.*, Milwaukee. There was oral argument by *Scott R. Halloin*.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jane C. Schlicht, Steven L. Nelson*, and *Stephanie L. Riches* of *Cook & Franke, S.C.*, Milwaukee. There was oral argument by *Jane C. Schlicht*.

Before Wedemeyer, P.J., Fine and Lundsten, JJ.

¶ 1. FINE, J. We granted the petition for leave to appeal filed by the defendants.[1] They seek reversal of the trial court's non-final order directing them to return to the plaintiffs documents produced during discovery

---

[1] The plaintiffs in the trial court are: the Harold Sampson Children's Trust, the Beth Bauer Trust, the Jamie L. Sherman Trust, and the Kay Yuspeh Trust. The defendants in the trial court are: Ann Mandelman, Nancy Simos, and Sampson Investments, as well as the Linda Gale Sampson 1979 Trust, the Steven J. Sampson 1979 Trust, and the Scott A. Sampson 1979 Trust—all successors to the B.J. Sampson Children's Trust.

that the trial court held were protected by the attorney-client privilege. We reverse.

### I.

¶ 2. This is an inter-family dispute over money, the specific details of which are not material to this appeal. During the litigation before the trial court, Robert L. Elliott, Esq., while he was the plaintiffs' attorney, turned over to the defendants documents that he determined were responsive to the defendants' discovery request. The plaintiffs later contended that some of the documents were protected from disclosure by the attorney-client privilege. The defendants asserted that the plaintiffs had waived whatever privilege there was.

¶ 3. The trial court referred the dispute over what documents were privileged and whether that privilege was waived to a referee, designated as a "discovery master," pursuant to WIS. STAT. RULE 805.06. The referee, Theodore J. Hodan, Esq., heard thirteen hours of testimony and argument and issued a comprehensive thirty-three-page report, encompassing his findings of fact and conclusions of law. *See* WIS. STAT. RULE 805.06(5)(a). On review, *see* WIS. STAT. RULE 805.06(5)(b), the trial court adopted the referee's findings of fact, but overturned the referee's conclusion that the plaintiffs had waived the attorney-client privilege. *See ibid.* ("In an action to be tried without a jury the court shall accept the referee's findings of fact unless clearly erroneous."). At oral argument, the plaintiffs conceded that the referee's findings of fact were not "clearly erroneous." Thus, we accept the facts material to our decision as they were found by the referee. *See* WIS. STAT. RULE 805.17(2) (appellate court bound by trial court's findings of fact unless they are "clearly errone-

ous"). We also assume, without deciding, that the documents are within the attorney-client privilege.

¶ 4. The referee found that Elliott "is a prominent, experienced, competent, well-respected, board certified civil trial lawyer, who is known to have handled many difficult complex and high-profile civil lawsuits," and that he "dealt primarily" with the plaintiff Beth Bauer as a " 'contact' person" in connection with the lawsuit during the time he was the plaintiffs' lawyer. Bauer testified that she gave the documents that are the subject of this appeal to Elliott. She also testified that the documents were produced by Elliott without her knowledge, and, as phrased by the referee, that she "did not intend, nor at any time agree that the documents in question could be or would be turned over to the defendants." She did, however, concede that Elliott had authority to respond to the discovery request.[2]

¶ 5. Bauer helped Elliott with the discovery request, but Elliott did the " 'privileged document review' " by himself. Although he could not recall whether he had looked at the specific documents that are the subject of this appeal, Elliott testified, as found by the referee, "that it was his practice (which he believed he followed in this case) to read every page of every document and if a question (about it being privileged) came up, he would ask the clients about the document." Further, Elliott reviewed the challenged documents at the hearing before the referee and Elliott testified that he saw "no reason for him to conclude that [the documents were] privileged."

---

[2] The referee found that "Elliott indicated that he believed he had authority to disclose all non-privileged documents," and that this was "consistent with the testimony submitted by Beth Bauer."

¶ 6. The referee opined however, that Elliott "should have realized that they were privileged or, at the least, realized that further information from the client regarding their creation was required prior to turning them over to the" defendants. As noted, the referee concluded that the plaintiffs had waived their attorney-client privilege in connection with the documents.

¶ 7. In reaching his decision, the referee surveyed the law dealing with the inadvertent disclosure of attorney-client privilege documents and concluded that the issue had not been addressed by an appellate court in Wisconsin. Nation-wide, he discovered, there were three approaches: lenient, strict, and intermediate. The "lenient" rule holds that "inadvertent" disclosure by an attorney of materials clothed with the attorney-client privilege does not waive the privilege. *See, e.g., Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 954–955 (N.D. Ill. 1982). The "strict" rule holds that disclosure, whether authorized by the client or not, is waiver because, in essence, the sounds of a bell once rung cannot be recaptured. *See, e.g., International Digital Sys. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449–450 (D. Mass. 1988) (decision by a United States Magistrate Judge). The intermediate, "totality-of-the-circumstances" approach attempts to balance such amorphous elements as: the reasonableness of safeguards in-place to prevent unauthorized disclosure of attorney-client privileged material; the extent of the document production request and the attendant burdens on the party responding to that request (for example, does the request seek a few documents or a few hundred thousand); any unreasonable delay in trying to retrieve the inadvertently produced documents; the number of times the producing party or its

lawyers have disclosed protected materials before; and an overall interests-of-justice, fairness calculus. *See, e.g., United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 174–185 (C.D. Cal. 2001) (applying federal common law) (none of the parties "challenged the appropriateness of steering the middle course between the strict rule that disclosure always constitutes a waiver and the forgiving rule that disclosure never results in a waiver unless a waiver actually was subjectively intended") (decision by a United States Magistrate Judge).

¶ 8. The referee concluded that of the three approaches, the intermediate approach was a better way of resolving the inadvertent production of privileged documents, even though it was "cumbersome, time-consuming, expensive, and in some cases, may be impracticable." The referee, however, determined that *none* of the approaches was applicable to this case because the documents were *not* produced inadvertently.[3] The referee found:

- "Elliott, in fact, reviewed each of the documents in question and then <u>intentionally</u> determined that they should be turned over to opposing counsel";

- "Attorney Elliott's actions [in producing the

---

[3] The referee insightfully observed that, in contrast to the facts of this case, "[m]ost of the cases [he] reviewed outline occurrences where privileged documents were clearly turned over 'inadvertently.' Factual situations that have been litigated include: Confidential documents that were supposed to be removed from a file or box were not removed; post-it notes that were supposed to identify confidential documents were inadvertently removed or fell off the privileged materials; [and] confidential materials were attached and sent to opposing counsel due to failures by clerical personnel."

documents] were deliberate and intentional";
and

- "Thus, Attorney Elliott's decision to turn over
 the documents was not 'inadvertent,' it was
 'intentional.' "

(Emphasis by the referee.) Accordingly, the referee
concluded that Elliott's production of the documents
waived his clients' attorney-client privilege as to those
documents. As an alternative ground for his decision,
the referee applied the totality-of-the-circumstances
test and determined that the defendants prevailed
under it as well.

¶ 9. The trial court disagreed with the referee's
conclusion, and held that "Elliott could not waive the
Plaintiffs' attorney/client privilege," as to the docu-
ments because, in its view, "the law in Wisconsin is only
the client can waive attorney/client communications."

## II.

¶ 10. This appeal presents a very narrow issue:
whether a lawyer's intentional discovery-request pro-
duction to opposing counsel of documents covered by
the attorney-client privilege waives that privilege when
the lawyer does not recognize the privileged character
of the documents. Although an excursion through the
various rules courts and ethics committees have
adopted in connection with the "inadvertent" produc-
tion of privileged material might make an interesting
journey,[4] we agree with the referee that, based on his

---

[4] For example, we would find in Pennsylvania an opinion by
the Philadelphia Bar Association's Professional Guidance Com-
mittee that it does not violate the Pennsylvania Rules of
Professional Conduct for a lawyer to keep and seek to use an

811

finding of fact, Elliott's transmission of the documents to the defendants was deliberate, intentional and not inadvertent; the rules applicable to "inadvertent" disclosure do not apply here. Rather, our decision turns on the nature of the attorney-client relationship, and what constitutes waiver under WIS. STAT. RULE 905.11.[5]

██

¶ 11. Our decision is based on two common precepts. First, under ordinary attorney-client agency principles, compliance with discovery requests is something that the client delegates to the attorney. The referee found that this was done here. Second, as recognized by the Federal Advisory Committee note to proposed FED. R. EVID. 511, which was adopted in Wisconsin as WIS. STAT. RULE 905.11, the formulation of waiver by *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), as the intentional relinquishment of a known right,

---

inadvertently faxed privileged document (Opinion 94–3, found online at: http://www.philabar.org/public/ethics/displayethics .asp?id=21622212000), and an informal opinion by the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility (Informal Opinion No. 95–57) disapproving the Philadelphia view.

[5] The Dissent ignores the referee's findings of fact, especially the finding of fact that Elliott deliberately gave the documents to the defendants, and discusses what we respectfully submit is a red herring—whether the referee's alternate conclusion that the intermediate approach in assessing whether the *inadvertent* production of privileged documents is a waiver of that privilege. Given the referee's governing findings of fact, which no one suggests are clearly erroneous, the Dissent's extensive discussion in paragraphs thirty-four through thirty-six of what may or what may not (or should or should not) be the law of privilege in the face of inadvertent disclosure is immaterial.

does not apply to waiver of evidentiary privileges.[6] The Federal Advisory Committee observed that "once confidentiality is destroyed through voluntary disclosure, no subsequent claim of privilege can restore it, and knowledge or lack of knowledge of the existence of the privilege appears to be irrelevant." Wisconsin Rules of Evidence 59 Wis. 2d at Rp. 151.[7]

A. *The attorney-client agency relationship.*

¶ 12. A lawyer has actual authority to act on behalf of the client, and the client is bound by what the lawyer does, where "the client has expressly or impliedly authorized the act." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 26 (1998). The RESTATEMENT

---

[6] As submitted by the United States Supreme Court to Congress for its approval pursuant to 1973 Public Law 93–12, the Federal Rules of Evidence included an Article V, dealing with privileges. STEPHEN A. SALTZBURG, MICHAEL M. MARTIN, & DANIEL J. CAPRA, 1 FEDERAL RULES OF EVIDENCE MANUAL 3–4; 2 FEDERAL RULES OF EVIDENCE MANUAL 587 (6th ed. 1994). Congress removed a listing of specific privileges from Article V from the Federal Rules of Evidence. 2 FEDERAL RULES OF EVIDENCE MANUAL at 585–588.

[7] *Johnson v. Zerbst*, 304 U.S. 458 (1938), concerned whether a criminal defendant had waived his constitutional right to counsel. *Id.*, 304 U.S. at 464. *Johnson* determined that the defendant's decision to go to trial without a lawyer might not have been an effective "waiver": "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Ibid. Johnson* remanded the case to the district court for such an evaluation. *Id.*, 304 U.S. at 469.

observes: "The word 'act' includes failures to act, for example when a lawyer does not object to something done in court." *Id.* at cmt. a. "Likewise, the client is bound by authorized lawyer action or inaction during litigation, for example when the lawyer asks a question that elicits an answer harmful to the client or files a frivolous motion." *Id.* at cmt. d. These comments recognize that the lawyer has actual authority to conduct litigation and does not need a specific delegation of authority with respect to each thing done or not done.

¶ 13. Closely related to the actual authority of the lawyer to bind the client is the lawyer's apparent authority to do so. These twin concepts "often lead to similar results." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 27 cmt. b (1998). The black-letter rule on apparent authority is:

> A lawyer's act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.

*Id.* at § 27. Manifestation of authorization is generally the attorney-client relationship itself. "[S]imply retaining a lawyer confers broad apparent authority on the lawyer unless other facts apparent to the third person show that the lawyer's authority is narrower." *Id.* at cmt. a. The RESTATEMENT explains: "By retaining a lawyer, a client implies that the lawyer is authorized to act for the client in matters relating to the representation and reasonably appropriate in the circumstances to carry it out." *Id.* at cmt. c. Although this "creates a risk that a client will be bound by an act the client never

intended to authorize," *id.* at cmt. b, the rule is necessary if the gears of the law are not to be embedded in the intractable sand of continual second-guessing and the attendant evidentiary hearings that, as the referee here recognized, would inevitably follow.

¶ 14. The attorney-client agency rule in Wisconsin mirrors that recognized by the RESTATEMENT. Thus, a client is responsible for the acts of his or her lawyer, even if that means suffering the harsh result of dismissal. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 283–284, 470 N.W.2d 859, 867–868 (1991):

> "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' "

(Quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–634 (1962); internal quoted source omitted by *Johnson*, 162 Wis. 2d at 284, 470 N.W.2d at 868.) Thus, in the context of whether a medical-malpractice case is barred by the statute of limitations or is saved by the "discovery rule" adopted by *Hansen v. A.H. Robbins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983), "what a lawyer retained by a plaintiff knows is imputed to that plaintiff." *Estate of Hegarty v. Beauchaine*, 2001 WI App 300, ¶ 84, 249 Wis. 2d 142, 189–190, 638 N.W.2d 355, 378 (Fine, J., dissenting, but writing the opinion of the

court on that issue, *see id.*, 249 Wis. 2d 142, ¶ 79); *see also Groom v. Professionals Ins. Co.*, 179 Wis. 2d 241, 250 n.3, 507 N.W.2d 121, 125 n.3 (Ct. App. 1993) ("A party is bound by the acts of her lawyer-agent and has notice of all the facts in the possession of her attorney.").

¶ 15. We now turn to how the attorney-client agency relationship affects the intentional—albeit allegedly erroneous—production of claimed attorney-client-privilege documents pursuant to a discovery request.

B. *Waiver.*

■

¶ 16. The attorney-client privilege is set out in Wɪs. Stat. Rule 905.03(2):

> Gᴇɴᴇʀᴀʟ ʀᴜʟᴇ ᴏꜰ ᴘʀɪᴠɪʟᴇɢᴇ. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative; or between the client's lawyer and the lawyer's representative; or by the client or the client's lawyer to a lawyer representing another in a matter of common interest; or between representatives of the client or between the client and a representative of the client; or between lawyers representing the client.

The privilege belongs to the client, *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 605, 150 N.W.2d 387, 412 (1967); *Swan Sales Corp. v. Jos. Schlitz Brewing Co.*, 126 Wis. 2d 16, 31–32, 374 N.W.2d 640, 648 (Ct. App. 1985), and may be claimed by the client or, among

others, by the attorney who was the client's lawyer when the client made the communication. WIS. STAT. RULE 905.03(3).[8]

¶ 17. The attorney-client privilege, as with all privileges recognized by WIS. STAT. ch. 905, may be waived. The general rule of waiver is in WIS. STAT. RULE 905.11:

> A person upon whom this chapter confers a privilege against disclosure of the confidential matter or communication waives the privilege if the person or his or her predecessor, while holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does *not apply if the disclosure is itself a privileged* communication.

At oral argument, the plaintiffs contended that the word "voluntary" was qualified by the requirement that it be both volitional *and knowing*—that there could be no waiver without the intentional relinquishment of a known right, referencing and adopting, in response to the court's question, *Johnson v. Zerbst*. But as we have seen, the Federal Advisory Committee's Note to proposed FED. R. EVID. 511, from which WIS. STAT. RULE 905.11 was copied, recognized that the *Johnson v. Zerbst* standard does not apply to waiver of evidentiary privileges. Thus, if the "holder of the privilege," namely

---

[8] WISCONSIN STAT. RULE 905.03(3) provides:

> The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer at the time of the communication may claim the privilege but only on behalf of the client. The lawyer's authority to do so is presumed in the absence of evidence to the contrary.

the client, "voluntarily discloses" a communication shielded by the attorney-client privilege, that disclosure need only be volitional. Given the attorney-client agency relationship, the same rule applies to disclosure by the client's attorney.

¶ 18. The black-letter rule is found in RESTATE-MENT (THIRD) OF THE LAW GOVERNING LAWYERS. Section 79 recognizes:

> The attorney-client privilege is waived if the client, the client's lawyer, or another authorized agent of the client voluntarily discloses the communication in a non-privileged communication.

As with the Federal Advisory Committee's Note to proposed FED. R. EVID. 511, whether the disclosure is done "voluntarily" is a matter of volition only: "The disclosing person need not be aware that the communication was privileged, nor specifically intend to waive the privilege." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 79 cmt. g. Similarly, "disclosure through a voluntary act constitutes a waiver even though not intended to have that effect." *Id.* at cmt. h. This is true because "[i]t would, after all, be an unusual case in which any person released a document for the *purpose* of surrendering a recognized right." *Liggett Group, Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 208 (M.D.N.C. 1986) (inadvertent disclosure) (emphasis in *Liggett*) (decision by a United States Magistrate Judge).

¶ 19. *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (D.C. Cir. 1979) (per curiam), *cert. denied sub nom. Sea-Land Services, Inc. v. United States*, 444 U.S. 915, is helpful to our analysis because the facts there are similar to the facts here. In

that case, Sea-Land Services sought return of documents produced by its lawyer to the United States Department of Justice pursuant to a subpoena *duces tecum. Id.*, 604 F.2d at 673. Two groups of documents were produced, and we discuss the group that is most analogous to the situation here.

¶ 20. The Department served its subpoena on Sea-Land, which told its original lawyer to comply but also "to withhold from production all documents which were felt might be covered by the attorney-client privilege." *Id.*, 604 F.2d at 674. As to the group of documents pertinent to our inquiry, the lawyer, for an unknown reason deemed irrelevant by the court, "did not mark these papers as potentially privileged and voluntarily turned them over." *Ibid. Ocean Transportation* opined as to the effect of this volitional transmission:

> This must be deemed a complete waiver. Original counsel's responsibility was to determine the privileged status of Sea-Land's documents. Its decisions in this regard were binding on its client. Privilege claims cannot be reopened by retaining new counsel who read the privilege rules more broadly than did their predecessor.

*Ibid.*

¶ 21. Plaintiffs contend that what the referee found to be Elliott's volitional transmission of the documents to the defendants could not waive the attorney-client privilege because of language in *Dudek* and *Swan Sales* that only the client may waive the attorney-client privilege. But the cases are inapposite.[9]

---

[9] Plaintiffs also rely on *In re Grand Jury Subpoena Dated July 13, 1979*, 478 F. Supp. 368, 372–373 (E.D. Wis. 1979), which held that the voluntary disclosure to the Securities and Ex-

¶ 22. In *Dudek*, an insurance-policy holder sued the insurance company, and subpoenaed the company's lawyer, Edward A. Dudek, Esq., to give testimony at a deposition. *Dudek*, 34 Wis. 2d at 568–569, 150 N.W.2d at 392–393. Although responding to some questions, Dudek refused to answer questions that in his view sought answers that invaded both the attorney-client privilege and the work-product doctrine. *Id.*, 34 Wis. 2d at 570, 150 N.W.2d at 393. The trial court directed Dudek to answer all but "28 inquiries in the transcript of the deposition." *Id.*, 34 Wis. 2d at 571, 150 N.W.2d at 394.

¶ 23. Although dealing mainly with the work-product doctrine, *id.*, 34 Wis. 2d at 583–605, 150 N.W.2d at 400–412, *Dudek* also addressed the attorney-client privilege, *id.*, 34 Wis. 2d at 578–583, 150 N.W.2d at 398–400. The policy holder contended that because Dudek had verified the company's answer and amended answer, Dudek had, as paraphrased by *Dudek*, "placed himself in the position of a party" and thus had waived the client's attorney-client privilege. *Id.*, 34 Wis. 2d at 605, 150 N.W.2d at 412. *Dudek* disagreed, noting only that "as an attorney Mr. Dudek may not waive any

change Commission, a grand jury, and the Internal Revenue Service of a report prepared by a law firm hired to assess its client's potential civil and criminal liability did not waive the attorney-client privilege with respect to notes of the underlying interviews. The district court opined that voluntary cooperation with the named agencies "should be encouraged," and not "substantially curtailed" by a rule that treated such cooperation as a waiver. *Ibid.* The district court did not even discuss, however, whether the privilege was waived with respect to those to whom the report was given, which, of course, is what we have here.

objections to discovery which are based upon the attorney-client privilege. Only the client can waive these objections." *Ibid.*

¶ 24. In *Swan Sales,* an in-house lawyer for one of the parties testified at a deposition in the case and submitted an affidavit in support of the party's motion for summary judgment. *Swan Sales,* 126 Wis. 2d at 30–31, 374 N.W.2d at 648. Swan argued that this waived both the attorney-client privilege and the work-product doctrine in connection with materials the lawyer used to prepare himself for the deposition and to draft the affidavit. *Id.,* 126 Wis. 2d at 30–31, 374 N.W.2d at 648. Holding to the contrary, *Swan Sales* opined: "[T]he mere fact that an attorney offers him- or herself as a witness does not automatically waive the attorney-client privilege or work product doctrine as to documents reviewed by the attorney in preparing to testify. We note that these privileges are owned by the attorney's client and can only be waived voluntarily at the client's direction." *Id.,* 126 Wis. 2d at 31–32, 374 N.W.2d at 648 (citing, in a footnote, WIS. STAT. RULES 905.03 and 905.11).

¶ 25. Neither *Dudek* nor *Swan Sales* dealt with the situation presented here: the volitional transmission of documents by a lawyer, pursuant to a discovery request, who was authorized by his client to deal with discovery matters. Moreover, in both *Dudek* and *Swan Sales,* the lawyers asserted the attorney-client privilege the moment the other side sought to invade the privilege; neither lawyer transmitted or disclosed confidential attorney-client-privilege material. Plaintiffs' attempt to morph the language from *Dudek* and *Swan Sales* into a hook with which to retrieve documents produced volitionally by their lawyer would transform

that language from a "holding" (because the language was clearly pertinent to the issues decided by those cases) into *dictum*. As we pointed out in *State v. Leitner*, 2001 WI App 172, ¶ 50, 247 Wis. 2d 195, 216–217, 633 N.W.2d 207, 217, *aff'd*, 2002 WI 77, ¶ 22, 253 Wis. 2d 449, 463–464, 646 N.W.2d 341, 348, a statement in a judicial decision is *dictum* if the issue argued to be controlled by that statement was not before the court making the statement, unless the statement is a " 'judicial act' " by a " 'court of last resort,' " which intends to lay down a rule to govern future cases, 253 Wis. 2d 449, ¶ 22 n.16 (quoted source omitted). The statements in *Dudek* and *Swan Sales* are not "judicial acts," and to apply them to an issue that was not even on the horizon for either court would violate the fundamental principle that has long been the spine of the judicial-decision process. As Chief Justice John Marshall observed:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, *but their possible bearing on all other cases is seldom completely investigated.*

*Cohens v. Virginia*, 6 Wheat. (19 U.S.) 264, 399–400 (1821) (emphasis added). In short, observations that are neither essential to the opinion in which they appear nor "judicial acts" by a "court of last resort" should not be allowed to leak from the container of

822

matters actually decided and affect issues not envisioned by the authors of that *dicta*.

¶ 26. To let the words that the plaintiffs quote from *Dudek* and *Swan Sales*, rather than the concepts or principles encompassed by those words in the context in which they were uttered, control the issue presented here, would, in our view, be akin letting the words of the Fourth Amendment protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects" exclude telephone booths. That, of course, is not the law. *Katz v. United States*, 389 U.S. 347, 351–353 (1967).[10]

### III.

¶ 27. In sum, we conclude that what the referee found to be Elliott's volitional act of transmitting the documents to the defendants pursuant to a discovery request, waived whatever attorney-client privilege the plaintiffs had in connection with those documents. Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 28. WEDEMEYER, P.J. (*dissenting*). I respectfully dissent from the majority opinion for the following reasons.

---

[10] We have borrowed this analogy, applied in a different context, from *Silveira v. Lockyer*, 328 F.3d 567, 568 (9th Cir. 2003) (order denying petition for rehearing *en banc*) (Kozinski, J., dissenting).

## A. *The Wisconsin Court of Appeals Standard of Review and Limited Power of Authority.*

¶ 29. This court reviews questions of law *de novo.* *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). However, we must still adhere to the applicable supreme court precedent regardless of our disagreement with it. *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 581, 427 N.W.2d 427 (Ct. App. 1988). In addition to being obligated to follow the applicable supreme court precedent, this court is precluded from adopting and/or applying rules from foreign jurisdictions that contradict the Wisconsin Supreme Court precedent. *Wolski v. Wilson*, 174 Wis. 2d 533, 497 N.W.2d 794 (Ct. App. 1993).

¶ 30. Our supreme court is the only state court that has been granted the authority and power to create and modify principles of law. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1977).[1] Unlike this court, it has been designated by the constitution of this state and the legislature as the sole "law-declaring" state court. *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983). This court does not have the same authority or power. Rather, our primary function is to act as an error correcting court. *State v. Schumacher*, 144 Wis. 2d 388, 398, 424 N.W.2d 672 (1988); *State v. Mosley*, 102 Wis. 2d 636, 665–66, 307 N.W.2d 200 (1981); *State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985). The Wisconsin Supreme Court, in *State ex rel. Swan v.*

---

[1] In some circumstances, we perform a second function, "that of law defining and law development, as [we] adapt[ ] the common law and interpret[ ] the statutes and federal and state constitutions in the cases [we] decide[ ]." *Cook v. Cook*, 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1977).

*Board of Elections*, 133 Wis. 2d 87, 93–94, 394 N.W.2d 732 (1986) summarized the role of this court best in stating:

> The court of appeals is intended to be a high-volume, error-correcting court, having a close relationship to the circuit courts in respect to the superintending control of circuit court functions .... The supreme court is primarily concerned with the institutional functions of our judicial system, while the court of appeals is charged primarily with error correcting in the individual case.

B. *Wisconsin Attorney-Client Privilege Standard.*

¶ 31. An attorney-client communication is privileged if it is "not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." WIS. STAT. § 905.03(1)(d). The attorney-client privilege belongs to, and is for the benefit of, the client; accordingly, only the client can "refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client ...." WIS. STAT. § 905.03(2).

¶ 32. It is the law in Wisconsin that only the client can waive the attorney-client privilege. *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 605, 150 N.W.2d 387 (1967); *Swan Sales Corp. v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 16, 31–32, 374 N.W.2d 640 (Ct. App. 1985); *Borgwardt v. Redlin*, 196 Wis. 2d 342, 352–53, 355, 538 N.W.2d 581 (Ct. App. 1995). Only the client has the authority to direct the attorney to waive the attorney-client privilege. *Dudek*, 34 Wis. 2d at 605; *Swan Sales Corp.*, 126 Wis. 2d at 31–32.

¶ 33. The Majority sets forth the three different tests used nationwide to determine the admissibility of previously disclosed attorney-client privileged documents: (1) the lenient test; (2) the strict test; and (3) the intermediate test. Majority slip op. at ¶ 8. In surveying the law, the referee discovered these three approaches.

¶ 34. Regardless of the tests being used by foreign jurisdictions across the nation, however, the circuit court here was bound to follow Wisconsin law. Any deviation from applying the law of this state will be corrected through an error of law analysis by this court.

¶ 35. The appellants contend that the circuit court incorrectly applied the leniency test to the instant case. They turn to the referee's opinion for support of their claim, pointing to the following excerpt:

> However, even though I have found [Attorney] Elliott's actions do not allow plaintiffs to qualify for the "totality of the circumstances" test, if it is ultimately determined that Elliott's actions do not, as a matter of law, disqualify plaintiffs from the applicability of this rule, I will also apply the five factors making up the totality of the circumstances test to the facts in this case . . .[.]

> I have weighed all of the legal factors, and applied them to the testimony and evidence submitted in this case. I hold and conclude that plaintiffs have failed to meet their burden of proof. I find that plaintiffs' attorney-client privilege in the documents, exhibits 1–25, has been waived. Therefore, plaintiffs' motion must be denied.

¶ 36. A referee, however, must apply the law that exists in this state, and does not have the authority to make or speculate what law the Wisconsin Supreme Court may apply. In reaching his decision, it is my

opinion that the referee did not follow precedent and arbitrarily applied his own conclusion. The referee came to the above-referenced conclusion despite finding that the documents in question were clearly privileged communication, as defined by WIS. STAT. § 905.03. He further found that the documents were made for the purposes of rendering legal services, that Ms. Bauer told Attorney Elliott the documents were prepared for counsel and constituted her thoughts, and that Ms. Bauer never intended or agreed that the documents in question could be disclosed to the defendants. Clearly, Ms. Bauer, as the client, never consented to waiving her attorney-client privilege; therefore, such privilege, under the laws of the State of Wisconsin, could not have been waived. The circuit court, although agreeing with the referee's findings of fact, correctly reversed its conclusion that the respondents waived their right to assert the attorney-client privilege, stating:

> But I'm going to say that even though I think the world of Mr. Hodan as a lawyer and as a good human being and as a friend, our professional responsibilities are our professional responsibilities. Though I feel that way about Mr. Hodan, he's not on the court of appeals or on the Wisconsin State Supreme Court. And myself as a lowly, subservient trial judge is not on the court of appeals or on the supreme court, and we're not supposed to be making law. That's not our function. I tried that. I tried that gap in the past and did a dance with three of them up there and seven on another occasion. I think there's a distinction between applying legal consents recognized in Wisconsin which fall within a judge's discretion, exploring a whole new area of law that hasn't been addressed in Wisconsin but has been addressed by other states. So it's not within my province to make new law.

> . . . .

827

But the law in Wisconsin is only the client can waive attorney/client communications. The lawyers for the client is there to zealously protect, and the lawyer is not supposed to allow a waiver. You generally find a lot of this dialogue in criminal proceedings, the divorce arena or the family court arena, and civil court arena are a little bit different. The cases cited by plaintiffs' counsel are correct.

¶ 37. In reversing the referee's decision, the circuit court applied the standard currently espoused by the Wisconsin Supreme Court. The circuit court correctly concluded that it is bound to follow and apply Wisconsin law. As a result, the circuit court was forced to amend the referee's conclusions of law to accurately reflect proper Wisconsin precedent. In my opinion, we are bound to follow the existing precedent until the Wisconsin Supreme Court concludes otherwise.[2] Accordingly, I would affirm.

---

[2] The Majority concludes that the existing law does not control the issue presented in this case because the waiver here was *intentional* and the existing case law addresses solely *inadvertent* disclosures. I disagree. In my opinion, we are bound to apply the general law applying to the attorney-client privilege until the Wisconsin Supreme Court, or our legislature, determines otherwise.