STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony J. LEITNER, Defendant-Appellant.†

Court of Appeals

*No. 00–1718–CR. Submitted on briefs January 5, 2001.— Decided July 12, 2001.*

2001 WI App 172

(Also reported in 633 N.W.2d 207.)

† Petition to review granted 9-19-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jim D. Scott* of *Michael Ablan Law Firm, S.C.*, La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mary E. Burke*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, Deininger and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Anthony Leitner pled no contest to reckless driving causing great bodily harm. On appeal, he claims the trial court erroneously denied his presentence request to withdraw his plea. He also claims the trial court violated the expungement statute, WIS. STAT. § 973.015,[1] by considering expunged convictions and the behavior underlying the expunged convictions when passing sentence. We reject all of Leitner's arguments and affirm the judgment.

## Background

¶ 2. On August 7, 1998, at approximately 2:00 a.m., Eric Dworschak was crossing a street in downtown La Crosse when he was struck by a car. Dworschak's injuries included permanent blindness in one eye. The driver of the car that struck Dworschak did not stop.

¶ 3. On February 4, 1999, Anthony Leitner was charged with hit and run causing great bodily harm under WIS. STAT. § 346.67(1)(a) and (c) (1997–98). At the preliminary hearing, Leitner's roommate at the time of the crime, Kevin Taylor, testified. Referring to the evening of August 6 and the early morning hours of August 7, 1998, Taylor said he saw Leitner drinking beer at their residence at about 8 p.m. He thought Leitner appeared intoxicated. He said Leitner left and

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

returned around midnight looking "pale" and "shaking." Leitner told Taylor he was scared and had done something "really bad." Taylor said Leitner told him "he thought he had hit someone down town [sic] going about 40 miles an hour." Taylor and Leitner then looked at Leitner's vehicle and Taylor observed a round indentation in the windshield, about one foot in diameter. Leitner was bound over for trial.

¶ 4. On April 13, 1999, Leitner filed a notice of alibi. The only witness he listed was Taylor.

¶ 5. On September 24, 1999, Leitner entered a no contest plea. Pursuant to a plea agreement, the State moved to amend the charge downward to reckless driving causing great bodily harm, Wis. Stat. § 346.62(4) (1997–98), a change that reduced Leitner's maximum prison exposure from twenty-four months to eighteen months. Leitner entered a plea to the reduced charge. There is no suggestion in the record that this plea was anything but a knowing and voluntary plea. The court ordered a presentence investigation report. Sentencing was scheduled for November 19, 1999.

¶ 6. The presentence report was issued on November 8. It contained a highly negative assessment of Leitner and recommended prison time. The report criticized Leitner for his lack of compassion for the victim and lack of remorse. The report also summarized some of the evidence against Leitner. It stated that witnesses at the scene believed the offending car was a Grand Am with the license plate THC-415. After getting a tip from a Crimestoppers caller, Leitner's vehicle, a Pontiac Grand Am, with license plate TSV-271, was located and seized. The report related that other witnesses who knew Leitner told police that Leitner threw his old license plates into the river. The previous plate for Leitner's car was THC-413.

¶ 7. Regarding criminal history, the presentence report indicated that Leitner had been convicted of misdemeanor hit and run and OWI causing injury. These crimes relate to an incident that occurred on October 28, 1997. The convictions had been expunged, but the presentence report did not mention expungement.

¶ 8. In a letter dated November 9 and filed with the court on November 10, Leitner's counsel stated that he had reviewed the presentence report and would discuss it with Leitner.

¶ 9. On November 16, three days before sentencing, Leitner filed a motion seeking plea withdrawal. In an affidavit accompanying his motion, Leitner alleged he had "an alibi witness who can and will substantiate my whereabouts at the time of the alleged offense." The affidavit contained nothing specific about what the witness would say, but did assert that the witness was Leitner's fiancée and that Leitner did not previously identify her as a witness because she had been pregnant and he was concerned that the stress of cross-examination would be detrimental to her health. Leitner asserted that his fiancée had since miscarried and, therefore, could now testify in his defense. The affidavit did not specify when Leitner's fiancée allegedly miscarried. Leitner also asserted in the affidavit that he entered his plea to limit his potential period of incarceration so that he could engage in parenting with less disruption.

¶ 10. On November 17, two days before the scheduled sentencing, a hearing was held on Leitner's plea withdrawal motion. At that hearing, Leitner's counsel said Leitner had not informed him at the time of the plea that his fiancée could provide alibi testimony or that he was pleading to spare her the ordeal of testify-

ing. Indeed, the record indicates that Leitner's counsel first learned of Leitner's assertion (that his fiancée was with him the night of the crime) by reading the presentence report. Leitner's counsel did not offer any evidence, but instead simply repeated the assertions in Leitner's affidavit and then highlighted case law applicable to plea withdrawal prior to sentencing.

¶ 11. The trial court denied Leitner's request for plea withdrawal. The court found that Leitner had failed to meet his burden of proof because he presented no evidence and merely asserted that a witness could provide an alibi. The court explained:

> I think that the case law envisioning an evidentiary hearing requires something more than a defendant coming in and saying I want to withdraw my plea because I have all this other evidence that's going to support my innocence and that evidence will be presented to you by witness A, witness B, witness C, without having anything from [witness] A, B or C. Right now that basically is an assertion, an allegation that somehow this [fiancée] is going to substantiate his alibi.

The trial court also found that Leitner's alleged reasons for pleading lacked credibility. Instead, the court believed that Leitner was motivated by the unfavorable presentence report.

¶ 12. After the trial court denied Leitner's request to withdraw his plea, Leitner's counsel requested that the November 19 sentencing hearing be rescheduled so Leitner could call his fiancée as a witness to support his plea withdrawal request. The trial court denied the request, noting that Leitner already had an opportunity to present evidence.

¶ 13. Sentencing was held on November 19. At the beginning of the hearing, Leitner's counsel noted

that the prior offenses listed in the presentence report had been expunged and should not be considered for sentencing purposes.

¶ 14. The State called two witnesses to show that Leitner attempted to cover up his guilt and to show lack of remorse.

¶ 15. Referring to the night of the crime, Leitner's former roommate Taylor testified that Leitner came home around midnight and said he had been downtown and thought he hit a person with his car. Taylor said he and Leitner looked at the indentation in the windshield. He said that night or the next morning Leitner put the license plates in the car's trunk and subsequently disposed of them. Taylor testified that over the course of the next month Leitner acted like it was not a big deal and like he thought he was going to get away with it. Another former roommate, Dan Coaty, testified that about three days after the accident, Leitner told him Leitner's car was "all messed up" because he hit someone downtown. Coaty testified that Leitner showed no remorse and told Coaty that he wished he had "hit [the victim] again to make him blind in the other eye."

¶ 16. Leitner's fiancée testified that she and Leitner had future plans for marriage. She said she had been pregnant, but recently "lost [the] child." Leitner's fiancée said she had never discussed the accident with Leitner. The court asked, "[w]ere you aware that as late as the day before yesterday Mr. Leitner was alleging that not only he didn't — that did he not do this, but also that you were an alibi witness for him?" Leitner's fiancée answered, "No."

¶ 17. During the prosecutor's sentencing argument she acknowledged that the convictions in the presentence report had been expunged. She went on to recount the underlying facts, which involved Leitner

striking a pedestrian with his car in a parking lot while Leitner was intoxicated. The prosecutor informed the court she was not relying on court records, but instead on police reports and her own case file. Leitner's counsel did not object and later addressed the facts underlying the expunged convictions during his own argument.

¶ 18. In passing sentence, the trial court referred to the incident underlying the expunged convictions as follows:

> You say you have no problem with alcohol and yet this is the second incident that you have been involved in that has resulted in your being charged with an alcohol-related offense, although it was not charged in this particular case, but certainly alcohol was involved.

¶ 19. The trial court criticized Leitner for his failure to take responsibility. It observed that Leitner had disposed of the plates to his car and attempted to present perjured testimony from his fiancée. The court sentenced Leitner to fifteen months in prison.

¶ 20. On April 20, 2000, Leitner requested sentence modification, arguing that the trial court had improperly relied on the expunged convictions. At a subsequent hearing, the trial court denied the motion, concluding that the expungement statute does not prohibit a sentencing court from considering facts underlying an expunged conviction. The trial court said: "The statute is clear that the conviction is expunged. It doesn't say anything about the facts being expunged." The court reasoned that if sentencing courts may consider uncharged violations and pending charges, they may consider facts underlying an expunged conviction.

## Analysis

¶ 21. Leitner raises two issues. First, he claims that the trial court erred in not finding a "fair and just" reason for plea withdrawal. Second, he complains that the trial court relied on an improper factor in passing sentence. Neither claim warrants relief.

### *Plea Withdrawal Motion*

¶ 22. Leitner pled no contest to reckless driving causing great bodily harm, but later filed a motion seeking plea withdrawal before his sentencing. As support for plea withdrawal, Leitner asserted in an affidavit that his fiancée could provide alibi testimony. Leitner explained that he pled no contest because his fiancée was pregnant and he did not want her to testify because he was concerned the stress of cross-examination would be detrimental to her health. Leitner also asserted he entered his plea to limit his potential period of incarceration so that he could engage in parenting with less disruption. Leitner asserted that his fiancée had since miscarried and, therefore, she could now "substantiate [his] whereabouts at the time of the alleged offense." He provided nothing specific, only these general assertions.

¶ 23. The trial court denied Leitner's request for plea withdrawal on two grounds. First, it found that Leitner failed to meet his burden of proof. Second, it found that Leitner's proffered reason for withdrawal was not credible. We affirm both findings.

¶ 24. A trial court's discretionary decision to deny plea withdrawal will be upheld on appeal when the court "reached a reasonable conclusion based on the

proper legal standard and a logical interpretation of the facts." *State v. Kivioja*, 225 Wis. 2d 271, 284, 592 N.W.2d 220 (1999). While courts should liberally grant plea withdrawal prior to sentencing, withdrawal is not automatic. *Id.*; *State v. Canedy*, 161 Wis. 2d 565, 582–83, 469 N.W.2d 163 (1991). A defendant must show there is a "fair and just reason" for allowing the withdrawal. *Kivioja*, 225 Wis. 2d at 283; *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995).

¶ 25. "Fair and just" means " 'some adequate reason for [a] defendant's change of heart' . . . other than the desire to have a trial." *Canedy*, 161 Wis. 2d at 583 (citation omitted). An assertion of innocence is important, but not dispositive. *Dudrey v. State*, 74 Wis. 2d 480, 485, 247 N.W.2d 105 (1976); *State v. Shanks*, 152 Wis. 2d 284, 290, 448 N.W.2d 264 (Ct. App. 1989).

¶ 26. The defendant bears the burden of proving a fair and just reason by a preponderance of the evidence. *Garcia*, 192 Wis. 2d at 862; *Canedy*, 161 Wis. 2d at 583–84. If a trial court finds the defendant's proffered reason for plea withdrawal incredible, it may deny the motion. *Garcia*, 192 Wis. 2d at 863.

¶ 27. When a defendant shows a fair and just reason, the trial court should permit the plea withdrawal unless there is substantial prejudice to the prosecution. *Kivioja*, 225 Wis. 2d at 283–84; *Garcia*, 192 Wis. 2d at 861. In this case, the State has not claimed substantial prejudice and so we address only whether Leitner demonstrated a fair and just reason.

¶ 28. The trial court properly denied the motion because it was not supported by a preponderance of evidence showing that Leitner actually had an alibi witness which he had previously chosen to conceal. At the hearing on his motion to withdraw his plea, Leitner did not produce his fiancée and did not offer his own testimony. He provided no details about what his fiancée might say if she testified. He did not even specify when she had miscarried. By neither specifying nor offering evidence of these details, Leitner failed to meet his burden of proof.

¶ 29. The trial court also found that Leitner's proffered reason for plea withdrawal lacked credibility. We defer to this finding and conclude it is well supported by the record.

¶ 30. The trial court could have reasonably concluded that it is not credible that Leitner failed to discuss his fiancée's potential testimony with his attorney if his fiancée could have plausibly testified that she was with Leitner during the time frame of the crime. Even if Leitner had been concerned about his fiancée's health due to her pregnancy, that concern does not explain why he did not even broach the issue with his attorney. Moreover, absent some information showing that Leitner's fiancée was particularly vulnerable during her pregnancy, there is no reason to think that testifying would endanger her health or her pregnancy.

¶ 31. In this context, the trial court was justified in finding that there was a very different reason for Leitner's belated request for plea withdrawal: the highly negative presentence report.

¶ 32. The presentence report discussed at length the details of the offense, including Leitner's complete lack of remorse and his efforts to conceal his involve-

ment. The report revealed that one of Leitner's room-mates feared him and was nervous about implicating Leitner because Leitner had previously pulled a knife on one person and had gone looking for another person while armed with an assault rifle. The report also disclosed that Leitner had threatened to kill a Marine sergeant when he was himself a Marine. The report recommended prison.

¶ 33. The record supports the belief that Leitner was hoping his plea would lead to probation and jail, not prison. At sentencing, his counsel recommended proba-tion with the condition of twelve months' jail with work release. The content of the presentence report made that prospect less likely. As the trial court explained:

> [O]bviously Mr. Leitner waited for the presentence investigation to be generated to see what its recommen-dations were going to be before he decided to ... attempt to withdraw his ... no contest plea. Then obviously when the presentence was unfavorable the first reaction is I don't want to plead guilty any more because now I know what I'm probably going to get at sentencing.

The trial court was entitled to consider the fact that Leitner waited until he saw the content of his presen-tence report before seeking plea withdrawal and infer from that fact, and the surrounding circumstances, that Leitner's true reason for seeking plea withdrawal was his fear of a harsh sentence due to the presentence report. *See State v. Booth*, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987) (courts are permitted to consider the fact that a defendant waited to "test the weight of potential punishment" before seeking plea withdrawal).

¶ 34. We are mindful of the fact that Leitner did not testify and, consequently, that the trial court did not have an opportunity to view Leitner's demeanor on the witness stand in assessing the credibility of his story. When facts are in dispute and credibility is an issue, live testimony is generally preferable. *Honeycrest Farms, Inc. v. A.O. Smith Corp.*, 169 Wis. 2d 596, 604, 486 N.W.2d 539 (Ct. App. 1992). However, the trial court was entitled to make factual findings based on Leitner's affidavit because Leitner effectively invited the trial court to do exactly that. That is, Leitner presented his factual assertions in affidavit form and chose not to testify at the hearing. Accordingly, he waived his opportunity to present live testimony on disputed factual issues. *See Connor v. Connor*, 2001 WI 49, ¶¶ 22, 38, 243 Wis. 2d 279, 627 N.W.2d 182; *see also Kelly v. Clark*, 192 Wis. 2d 633, 655, 531 N.W.2d 455 (Ct. App. 1995) (stating the waiver rule, but finding no waiver).

¶ 35. Leitner makes a one-sentence assertion in his brief that the trial court wrongly denied him an evidentiary hearing. He is apparently referring to his belated request for a delay to present testimony from his fiancée. We are not persuaded. Leitner was given an opportunity to present evidence and instead relied on the sparse assertions contained in his affidavit. His request to delay sentencing so he could have a second hearing was properly denied.

■

¶ 36. Finally, we note that the trial court's fact finding, even though based in part on disputed assertions in an affidavit, is accorded deference. Although there are broad pronouncements in prior cases indicating that fact finding based on documentary evidence is

not accorded deference,[2] it is clear that when parties effectively invite fact finding based on affidavits, thereby waiving the right to present live testimony, the resulting factual findings are accorded deference on appeal. *See Connor*, 2001 WI 49 at ¶ 31.

¶ 37. For these reasons, the trial court did not misuse its discretion when it denied Leitner's request to withdraw his plea.

### Consideration Of Expunged Offenses At Sentencing

¶ 38. At times, Leitner seems to complain that the trial court at sentencing improperly relied on the expunged convictions themselves. At other times, he complains that the trial court improperly relied on the facts underlying the expunged convictions. He argues that the expungement statute, WIS. STAT. § 973.015, directs courts and law enforcement agencies, such as the La Crosse County District Attorney's Office, to destroy all records relating to an incident which is the subject of an expunged conviction. Leitner requests resentencing "with instructions that the trial court may not rely upon the expunged record."

¶ 39. A defendant is entitled to resentencing when a sentence is affected by a trial court's reliance on an improper factor. *See Harris v. State*, 75 Wis. 2d 513, 518, 250 N.W.2d 7 (1977); *State v. Suchocki*, 208 Wis. 2d 509, 517–18, 561 N.W.2d 332 (Ct. App. 1997); *State v. Mosley*, 201 Wis. 2d 36, 45, 547 N.W.2d 806 (Ct. App. 1996). Leitner's sentencing claim fails because the trial court did not rely on an improper factor.

---

[2] *See, e.g., State ex rel. Sieloff v. Golz*, 80 Wis. 2d 225, 241–42, 258 N.W.2d 700 (1977); *Shawn B.N. v. State*, 173 Wis. 2d 343, 356, 497 N.W.2d 141 (Ct. App. 1992).

¶ 40. To the extent Leitner argues that the trial court relied on the expunged convictions themselves, his argument fails because the record shows otherwise. The trial court made no reference to the expunged convictions while explaining the sentence imposed, and the court's comments at the postconviction hearing reveal that it understood the convictions had been expunged and that it could not consider them.

¶ 41. Before proceeding further, we observe that Leitner waived his complaint. regarding the court's consideration of the underlying behavior. It is true that at the beginning of the sentencing hearing Leitner's counsel advised the court that the prior offenses listed in the presentence report had been expunged and asked the court not to consider them for sentencing purposes. Still, counsel's brief oral comments left it unclear whether he was asking the court to ignore the fact that Leitner had been convicted, or to ignore the convictions *and* the underlying behavior. When the prosecutor subsequently argued that the trial court should not consider the convictions, but was free to consider the underlying behavior, Leitner's counsel did not object. More importantly, there was no objection when the trial court made reference to the underlying behavior in passing sentence. So far as the trial court knew, Leitner agreed with the prosecutor's analysis and did not object to the court's consideration of the underlying conduct. Accordingly, Leitner waived the claim. *See Mosley*, 201 Wis. 2d at 46; *State v. Rogers*, 196 Wis. 2d 817, 826–29, 539 N.W.2d 897 (Ct. App. 1995); *State v. Holt*, 128 Wis. 2d 110, 122–24, 382 N.W.2d 679 (Ct. App. 1985).

██

¶ 42. In this case, however, we choose to ignore the waiver. The waiver rule is one of judicial administration, and appellate courts have the authority to ignore a waiver when a case presents an important recurring issue. *Olmsted v. Circuit Court*, 2000 WI App 261, ¶ 12, 240 Wis. 2d 197, 622 N.W.2d 29. We believe the expungement questions raised here merit a decision.

¶ 43. Leitner asserts that the legislature enacted the expungement statute in part to prevent sentencing courts from considering the behavior underlying expunged convictions. Apparently, Leitner believes the legislature attempted to achieve this goal by crafting a statute that requires courts and law enforcement agencies, such as a district attorney's office, to destroy all records relating to an incident which is the subject of an expunged conviction.

██

¶ 44. We begin our analysis of this issue by observing that sentencing courts have a general responsibility to acquire "full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence." *Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980). In order to meet this responsibility, courts may consider uncharged and unproven offenses. *Id.* at 284. A court may even consider factual circumstances related to offenses for which the defendant has been acquitted. *State v. Bobbitt*, 178 Wis. 2d 11, 16–17, 503 N.W.2d 11 (Ct. App. 1993). Thus, unless there is an applicable prohibition, it is apparent that the sentencing court properly considered the behavior underlying Leitner's expunged convictions.

¶ 45. The only prohibition Leitner points to is the expungement statute, WIS. STAT. § 973.015. Accord-

ingly, we are called on to determine whether § 973.015 prohibits a sentencing court from considering behavior underlying an expunged conviction and whether the statute directs law enforcement agencies, such as a district attorney's office, to destroy all records documenting the behavior underlying an expunged conviction.

¶ 46. The proper construction of a statute is a question of law. *DeMars v. LàPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). We first look to the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986); *see also State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986). Only when statutory language is ambiguous may we examine other construction aids such as legislative history, context, and subject matter. *Waalen*, 130 Wis. 2d at 24. A statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248.

¶ 47. Our review of WIS. STAT. § 973.015 reveals that the plain language of the statute does not prohibit a sentencing court from considering behavior underlying an expunged conviction. It reads:

> **(1)** When a person is under the age of 21 at the time of the commission of an offense for which the person has been found guilty in a court for violation of a law for which the maximum penalty is imprisonment for one year or less in the county jail, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.

215

(2) A person has successfully completed the sentence if the person has not been convicted of a subsequent offense and, if on probation, the probation has not been revoked and the probationer has satisfied the conditions of probation. Upon successful completion of the sentence the detaining or probationary authority shall issue a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record.

Nothing in this statute tells a sentencing court that it may not consider behavior underlying an expunged conviction. Accordingly, if such behavior comes to the attention of a sentencing court through a means apart from government records, there is not even an arguable violation of § 973.015.

¶ 48. The question remains whether the expungement statute required the district attorney in this case to destroy his records relating to Leitner's expunged convictions.

¶ 49. WISCONSIN STAT. § 973.015 itself is entirely silent regarding district attorneys' offices and other law enforcement agencies. It speaks only of the "court of record." Thus, there is nothing in the language of the expungement statute which directs law enforcement agencies to destroy records relating to an expunged conviction and no ambiguity to resolve.

¶ 50. Leitner points to dictum in *State v. Anderson*, 160 Wis. 2d 435, 466 N.W.2d 681 (Ct. App. 1991), in support of his interpretation. In *Anderson*, this court addressed whether an expunged conviction could be used as a "conviction" to impeach a witness pursuant to WIS. STAT. § 906.09(1). En route to rejecting a defense argument, this court in *Anderson* quoted the trial court in that case:

We are also persuaded by the circuit court's logic. The [circuit] court stated: "Clearly, the purpose of expungement is just that—to, in effect, obliterate the record of the individual. In fact, had the State followed it to the letter, what should have been done, their record should also have been destroyed regarding [the witness] . . . ."

*Anderson*, 160 Wis. 2d at 441. This statement need not be accorded weight because there was no need or attempt in *Anderson* to analyze whether WIS. STAT. § 973.015 required any entity to destroy records. *See State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) ("Dicta is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it.").

¶ 51. Moreover, dictum from our supreme court suggests that WIS. STAT. § 973.015 is directed only at *court* records. In *Breier v. E.C.*, 130 Wis. 2d 376, 387 N.W.2d 72 (1986), the supreme court addressed the authority of circuit courts to order police agencies to destroy juvenile records. Along the way, the court examined § 973.015 and said: "[T]he legislature has determined that the only records which may be expunged are court records . . . . In this situation, the [circuit] court may expunge only the court records, and then, only if the court determines that the person will benefit and society will not be harmed by this disposition." *Breier*, 130 Wis. 2d at 384–85.

¶ 52. Our application of the plain language rule of construction does not lead to an absurd interpretation of the statute. *See State v. Yellow Freight Sys., Inc.*, 101 Wis. 2d 142, 153, 303 N.W.2d 834 (1981) (the plain language of the statute should not be construed in a manner that results in absurd or unreasonable conse-

quences). Our decision does not undermine several significant benefits conferred by the statutory directive that the conviction itself is expunged. For example, an expunged conviction is not a conviction for purposes of impeaching a witness with a prior conviction. *Anderson*, 160 Wis. 2d at 440–41.

¶ 53. In summary, we hold that WIS. STAT. § 973.015 does not require law enforcement agencies, such as a district attorney's office, to destroy records relating to an expunged conviction. Further, § 973.015 does not prohibit sentencing courts from considering behavior underlying expunged convictions.

*By the Court.*—Judgment and order affirmed.