STATE of Wisconsin, Plaintiff-Respondent,†

v.

Barry M. JENKINS, Defendant-Appellant.

Court of Appeals

*No. 2005AP302–CR. Submitted on briefs December 6, 2005.*
*—Decided January 31, 2006.*

2006 WI App 28

(Also reported in 710 N.W.2d 502.)

† Petition to review granted 6-14-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Melinda A. Swartz*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura F.J. Whelan*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Barry M. Jenkins appeals from a judgment of conviction for delivery of heroin, less

than three grams, second offense, contrary to WIS. STAT. § 961.41(1)(d)1. (2001–02),[1] and from orders denying his motion for postconviction relief. Jenkins argues that: (1) the trial court erroneously denied his motion for plea withdrawal, which he made prior to sentencing; (2) a manifest injustice exists that warrants plea withdrawal because his plea was not entered knowingly and voluntarily; and (3) the trial court erred when it concluded that Jenkins had been provided effective assistance of counsel. We conclude that the trial court should have granted Jenkins's presentence motion to withdraw his plea because he provided a fair and just reason to do so and the State has offered no argument that it would have been substantially prejudiced if the motion were granted. Therefore, we reverse and remand for further proceedings. We do not address the remaining issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

## BACKGROUND

¶ 2. In September 2002, Jenkins was charged in connection with the sale of heroin to an undercover officer. Although Jenkins originally pled not guilty, he changed his plea to guilty on February 24, 2003. At the plea hearing, the State informed the trial court that the plea agreement included the State's recommendation of two years of initial confinement, two years of extended supervision, a one thousand dollar fine, and costs. Although the parties referenced an "offer letter" at the plea hearing, the specific contents of that letter were not discussed or read to the trial court.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. The trial court then proceeded with a standard guilty plea colloquy. As part of this colloquy, the trial court asked Jenkins if he had been promised anything or threatened; Jenkins replied no to both questions. The trial court accepted Jenkins's plea and found him guilty. At the conclusion of the hearing, the trial court asked defense counsel whether Jenkins might be a good candidate for the Felony Drug Offender Alternative to Prison Program (FDOATP). Defense counsel replied: "We are seeking an adjournment of this matter. He has some people that he needs to talk to that may influence your judgment on sentencing, so I'm asking for about 45 days." The trial court then said Jenkins might be eligible for the Challenge Incarceration Program, ordered a presentence investigation, and scheduled sentencing for April 24, 2003.

¶ 4. On April 19, 2003, Jenkins personally wrote a seven-page letter to the trial court. In that letter, which we acknowledge is difficult to interpret, Jenkins complained about a conspiracy against him. He referenced an offer he made to the State in October 2002 to provide information on heroin traffickers in exchange for a dismissal of the charges. Jenkins asserted that he ultimately pled guilty based on his belief that he had to admit guilt before the State would allow him to receive the benefit of any assistance he might provide to law enforcement. Jenkins also complained about defense counsel's representation, and asked the trial court to dismiss the case against him. No action was taken on Jenkins's letter, and it appears that defense counsel was not aware of the letter until the trial court asked counsel about it at sentencing.

¶ 5. The parties appeared for sentencing on April 28, 2003, four days later than originally scheduled.[2] Defense counsel moved for an adjournment for thirty or sixty days, noting that the State would not be prejudiced because Jenkins was currently incarcerated on another charge anyway. Defense counsel explained the reason for the adjournment:

> A previous attorney had this case and it remained in trial posture and [Jenkins] asked for a second attorney. When I took the case, he had told me about wishing to cooperate with the state to help himself.
>
> . . . .
>
> And I approached [the prosecutor] and he said, well, what would have to happen would be that he would have to accept responsibility for the act for which he was charged. I had filed jurisdictional objections, motion on the photo array and that he was arrested on. [sic] I explained that to [Jenkins] and he said, based on the fact that he wanted to cooperate with the state, he would accept the responsibility and, at the plea [hearing] . . . I asked you to withdraw the motion.
>
> [After the plea hearing, the prosecutor had two detectives interview] my client after I had debriefed him. I made an offer of proof to [the prosecutor], and that was the basis that he sent the Milwaukee detectives to meet with [Jenkins]. They met for an extensive period of time, and I met with the detectives afterward. They informed me that he had volumes of information; good information.

Defense counsel said that although his client had provided good information, the detectives said that to get

---

[2] The record indicates that an off-the-record hearing with the trial court, defense counsel and the State occurred days earlier. The notes of that meeting state that "[d]ue to calendar congestion, case adjourned to April 28, 2003" for sentencing.

credit, Jenkins would have to arrange a narcotics sale, which was impossible because he was incarcerated. However, one detective said he would try to influence the liaison officer from the federal government to interview Jenkins. Defense counsel said that he also spoke with an assistant district attorney who served as a special federal prosecutor, and that the assistant district attorney said he would approach numerous federal agencies based on defense counsel's offer of proof.

¶ 6. Defense counsel said that he subsequently placed at least twenty phone calls trying to arrange for Jenkins to meet with the federal government, but that he was told that the federal government was more interested in terrorism than drug crimes. Thus, Jenkins never met with federal agents.

¶ 7. Defense counsel said that he then went back to the same assistant district attorney, who promised to try to get the Internal Revenue Service's Criminal Investigation agents involved because Jenkins, in his offer of proof, had spoken of how he had purchased cars from people for cash in excess of $10,000. The IRS had not met with Jenkins as of the sentencing date.

¶ 8. Defense counsel stated that he was seeking an adjournment "because I've not been informed that they are strictly not interested, they just have not had the time or resources" to interview Jenkins. Defense counsel also outlined some of the evidence that Jenkins was willing to share with law enforcement. Defense counsel reiterated his interest in finding law enforcement officers willing to listen to Jenkins and give him credit for cooperating.

¶ 9. The trial court then asked defense counsel whether "[Jenkins] entered a guilty plea because he had some sort of sense that he would definitely be working with authorities[.]" Defense counsel replied:

530

I was suggesting that I told him that he would have to accept responsibility as the entry card to doing this work. [The prosecutor] insisted on that.

[Jenkins] said, ["T]hat's okay if I can get to talk to these people, I have a lot to tell them,["] and then I proceeded to do the debriefing so I could make an offer of proof. I think in his mind . . . he was not thinking that he would get out of everything, that maybe [the trial court] would go along with [the prosecutor] on the recommendations or something like that, but it was to get more out of the business and that he would have some . . . good come of it, that you could consider it in making your sentencing . . . .

¶ 10. The trial court asked for the State's position. The prosecutor replied: "I don't have a specific objection to it. I understand [counsel's] comments and I appreciate them." In response, the trial court stated that in an off-the-record discussion the previous week, it had spoken with a different assistant district attorney and the trial court had indicated it was not inclined to adjourn the sentencing hearing. The trial court explained that one reason it was not inclined to adjourn the hearing was that Jenkins, who was serving time in prison for another crime, had to be brought to court from a great distance, requiring transportation and presenting a risk to officers. The trial court also observed:

It does not appear as if the authorities are interested in his cooperation. I do think that the federal authorities are still working drug cases. That has not gone away. They just don't think from what you've described, [counsel], that [Jenkins] is a particularly promising asset for the law enforcement authorities. Any time anybody's incarcerated, their value is dimin-

ished, the information becomes stale, and so they're not working with him, so I'm not inclined to adjourn the sentencing at all.

If what you're telling me is he entered a guilty plea premised on the notion there would be cooperation and because no one has gone to see him, there's been a breach of the plea agreement, and you want me to vacate the plea and start all over again, we can start talking about that. I'll have to hear what the state has to say, but absent a showing that that was part of the plea agreement in this case, I am not prepared to adjourn.

¶ 11. With respect to the plea, defense counsel said that there was nothing discussed at the plea hearing about Jenkins's plans to become a police informant. He added: "Perhaps [Jenkins] would care to make a motion for a change in plea. I don't have a good faith ability to do that for you because I did not do that on the record during the plea taking."

¶ 12. In response, the trial court appeared to assume that Jenkins was not seeking to withdraw his plea and proceeded to clarify the plea recommendation of two years of initial confinement, two years of extended supervision, and a fine. The trial court asked Jenkins if that was his understanding, which led to the following exchange:

[JENKINS]: I would like to withdraw my plea.

THE COURT: What is the basis for that request?

[JENKINS]: Stipulations that I'm not able to fulfill, what I had my projections on. I'm sure the federal agents were meaning to speak to me.

[My attorney] has done a lot, you know, in regards to this, and it's on the basis, the sole basis is it was

532

initially my part, my purpose of entering the plea that I entered which was a guilty plea, and I would just like to withdraw my plea.

THE COURT: What was your understanding of what was going to happen?

[JENKINS]: At least I would benefit . . . be able to get out of the life I'm already in or I was involved in at the time. And sort of, you know, they bring in at least to assist the state here, you know, from much of the troubles I've caused and the stress we place on Milwaukee, the police department here in this state, and sort of abolish this heroin that's flowing into the states and guns and everything else, so sort of just kind of get myself cleared up and get back on track.

It's not too much about the time, you know. It's not much time. I've done, as you can read, I've done time before. My point is just to get some changes, you know, with myself and help.

THE COURT: Mr. Jenkins, no one has a right to any kind of special treatment. Sometimes a plea agreement is reached that has certain specific parts to it that require one party to do something or the other party to do something else. And from what [your attorney and the State] . . . told me, that was not part of the plea agreement that was reached here. So you had a hope that did not come to fruition. Nothing happened. No one came to see you. But I don't see that that was a violation of a plea agreement; therefore, I will not permit you to vacate your plea and we will proceed to sentencing.

¶ 13. The trial court then asked questions about the presentence report and heard argument from the parties. The trial court asked the parties about a letter it received directly from Jenkins, in which Jenkins expressed disappointment in the criminal justice sys-

tem. The trial court read portions of the April 19, 2003, letter where Jenkins complained that he had felt pressured to plead guilty by his attorney and the State. The trial court then spoke directly to Jenkins:

> The letter expresses dissatisfaction but the problem, Mr. Jenkins, is that [defense counsel] doesn't get to control what the offer from the state is. The state controls that, and so many times there is dissatisfaction with defense attorneys because the deal they're able to bring to their clients is not one that's satisfactory to the client but it is what it is. It is what the state has offered, okay?

¶ 14. Next, both defense counsel and Jenkins said that they wanted defense counsel to withdraw. The trial court denied this request after determining that Jenkins had already been appointed two lawyers and, consistent with its policy, the State Public Defender was not likely to appoint a third attorney. Jenkins talked about hiring an attorney, but said he could not do so quickly. The trial court offered to delay sentencing for a week, but Jenkins said he would rather just keep defense counsel.

¶ 15. The parties gave their arguments on sentence. The trial court discussed Jenkins's extensive criminal history and the presentence investigation report's recommendation of five-to-seven years of initial confinement and one-to-two years of extended supervision. The trial court sentenced Jenkins to five years of initial confinement and three years of extended supervision, plus a $500 fine.

¶ 16. Jenkins moved for postconviction relief on grounds that: (1) the trial court erred when it denied Jenkins's motion for plea withdrawal prior to sentencing; and (2) Jenkins was denied the effective assistance

of trial counsel because counsel did not move for plea withdrawal prior to sentencing. With respect to the first ground, Jenkins argued that the record demonstrated a fair and just reason for allowing him to withdraw his plea: Jenkins did not understand the plea agreement and its consequences. In support of his motion, Jenkins provided copies of numerous letters, including one he received from his defense counsel prior to pleading guilty that provided in relevant part:

> I also was informed by [the State] that you wrote to him concerning the possibility of getting some benefit for some information that you know. It is often possible to work out an arrangement where a defendant gets credit for what aid he gives to the police departments. He might even get enough credit that the police would testify at a sentencing hearing so [Jenkins] would not be sent to prison. [The State] is willing to work out some arrangement but [the State] insists that you take responsibility for your acts beforehand. That is, acknowledge that it was you making the hand to hand buy from the police officers. If you then wish to work with officers from narcotics or vice, that can be arranged. You would be debriefed and given use immunity for anything that you told to them. They would then make arrests or get warrants leading to arrests. If there were productive arrests from your information, you would be given credit. You might be given a lot of credit if you further testified against perpetrators. Bear in mind that all of this is predicated on acceptance of responsibility for the crime for which you were charged.

¶ 17. The State opposed Jenkins's motion, asserting that there was no fair and just reason to grant Jenkins's motion for plea withdrawal prior to sentencing because, it asserted, there was no actual misunderstanding of the plea agreement. The State explained that being provided the opportunity to give information

was not part of the plea agreement, noting that neither party told the trial court it was part of the agreement when Jenkins pled guilty. The State also provided a copy of an offer letter dated October 2, 2002, that offered to recommend a specific sentence, but did not mention any opportunities to provide information to law enforcement officers.

¶ 18. Jenkins filed a supplemental postconviction motion, adding the argument that a manifest injustice exists because his plea was not knowingly and voluntarily entered. The trial court denied both motions without a hearing and this appeal followed.[3]

## DISCUSSION

¶ 19. Jenkins presents three arguments on appeal, all based on his presentencing motion to withdraw his guilty plea. We conclude that there was a fair and just reason for Jenkins to withdraw his guilty plea, and that the trial court therefore erroneously exercised its discretion when it denied Jenkins's motion. Therefore, we reverse and remand for further proceedings.

¶ 20. "[A trial] court should freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution will be substantially prejudiced." *State v. Bollig*, 2000 WI 6, ¶ 28, 232 Wis. 2d 561, 605 N.W.2d 199. *Bollig* stated:

> Although "freely" does not mean "automatically," the exercise of discretion requires the court to take a

---

[3] The trial court held in abeyance, pending a Wisconsin Supreme Court decision, the issue whether Jenkins's plea was not knowingly entered based on the trial court's failure to inform Jenkins that he would have to serve each day of the initial confinement imposed by the trial court. This issue is not being raised on appeal and will not be addressed.

liberal, rather than a rigid, view of the reasons given for plea withdrawal. A fair and just reason contemplates "the mere showing of some adequate reason for defendant's change of heart." However, the reason must be something other than the desire to have a trial.

*Id.*, ¶ 29 (citations omitted). In contrast to the liberal standard for allowing plea withdrawal before sentencing, motions to withdraw after sentencing "will be granted only when necessary to correct a manifest injustice." *State v. Duychak*, 133 Wis. 2d 307, 312, 395 N.W.2d 795 (Ct. App. 1986).

¶ 21. "Although 'fair and just reason' has not been precisely defined," Wisconsin courts have recognized a variety of fair and just reasons for plea withdrawal prior to sentencing, such as: genuine misunderstanding of the plea's consequences; haste and confusion in entering the plea; coercion on the part of trial counsel; and confusion resulting from misleading advice from the defendant's attorney. *State v. Shimek*, 230 Wis. 2d 730, 739, 601 N.W.2d 865 (Ct. App. 1999). In addition, an "assertion of innocence and the promptness with which the motion [to withdraw a plea prior to sentencing] is brought [are] factors relevant to the court's consideration," *see id.*, but they are neither required nor determinative.

¶ 22. The defendant has the burden of proving, by a preponderance of the evidence, a fair and just reason for the plea withdrawal. *State v. Garcia*, 192 Wis. 2d 845, 862, 532 N.W.2d 111 (1995). We review a trial court's decision to deny a defendant's motion to withdraw his guilty plea prior to sentencing using the erroneous exercise of discretion standard. *State v. Tim-*

*blin*, 2002 WI App 304, ¶ 20, 259 Wis. 2d 299, 657 N.W.2d 89. "Thus, we will uphold a discretionary decision if the [trial] court reached a reasonable conclusion based on the proper legal standard and a logical interpretation of the facts." *Id.*

## A. Fair and just reason

¶ 23. Jenkins argues that he had a genuine misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement to potentially receive a benefit at sentencing, and that this is a fair and just reason to allow plea withdrawal. In support of his argument, he cites *State v. Manke*, 230 Wis. 2d 421, 602 N.W.2d 139 (Ct. App. 1999), where we upheld a trial court's finding that a fair and just reason existed to allow the defendant to withdraw his guilty plea where the defendant presented evidence that he misunderstood the plea and received misleading advice from his lawyers.[4] *Id.* at 430.

¶ 24. We agree with Jenkins that he asserted a fair and just reason to allow him to withdraw his guilty plea; specifically, that he had a genuine misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement to potentially receive a benefit at sentencing.[5] This misunderstanding was corroborated with undisputed, substantial evidence

[4] In doing so, we acknowledged that our affirmance was based on a discretionary standard of review. *See State v. Manke*, 230 Wis. 2d 421, 430, 602 N.W.2d 139 (Ct. App. 1999).

[5] Jenkins's primary reason for plea withdrawal is his assertion that he had a genuine misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement to potentially receive a benefit at sentencing. He also briefly argues that he has asserted his innocence and that his

in the record, including the letter from defense counsel to Jenkins, and defense counsel's assertions at the sentencing hearing about his efforts to provide Jenkins with an opportunity to assist law enforcement. We do not see this as an ineffective assistance of counsel case, but instead a case that can be decided based on Jenkins's misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement.

¶ 25. The trial court rejected Jenkins's motion not because it found Jenkins's assertions incredible, but because it found that the plea agreement had not guaranteed Jenkins an opportunity to work with law enforcement. The trial court told Jenkins:

motion for plea withdrawal was brought expeditiously. The Dissent faults the Majority for focusing on Jenkins's primary reason for withdrawal and not analyzing two of the other relevant factors: allegations and proof of innocence, and whether there was actual misconduct by "the authorities" in order to withdraw a plea prior to sentencing. *See* Dissent, ¶ 3. In response, we note that "[a]n assertion of innocence is important, but not dispositive." *State v. Leitner*, 2001 WI App 172, ¶ 25, 247 Wis. 2d 195, 633 N.W.2d 207, *aff'd*, 2002 WI 77, 253 Wis. 2d 499, 646 N.W.2d 341. Moreover, Jenkins has asserted that he is innocent; the State contests the reliability of that assertion. Rather than focus on the parties' dispute concerning that single, non-dispositive factor, we have focused on the factor most relevant under the facts of this case: Jenkins's assertion that he had a genuine misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement to potentially receive a benefit at sentencing. Applying the requisite "liberal, rather than [] rigid, view of the reasons given for plea withdrawal[,]" *see State v. Bollig*, 2000 WI 6, ¶ 29, 232 Wis. 2d 561, 605 N.W.2d 199, we conclude that Jenkins has proven a fair and just reason for plea withdrawal.

> Sometimes a plea agreement is reached that has certain specific parts to it that require one party to do something or the other party to do something else. And from what [your attorney and the State] . . . told me, that was not part of the plea agreement that was reached here. So you had a hope that did not come to fruition.

This finding suggests that the trial court believed that *the State and defense counsel* may not have considered working with law enforcement a specific component of the plea agreement. Even if that were the case, it does not negate Jenkins's assertion that *he* believed it was part of the agreement. The State points to no evidence that Jenkins was explicitly told that there was no guarantee, and Jenkins has provided undisputed evidence that corroborates the reasonableness of his belief.

¶ 26. First, defense counsel's pre-plea letter to Jenkins stated that the State was "willing to work out some arrangement but [] insists that you take responsibility for your acts beforehand." The letter explained in detail what Jenkins had to do to receive a benefit:

> [You must] acknowledge that it was you making the hand to hand buy from the police officers. If you then wish to work with officers from narcotics or vice, that can be arranged. You would be debriefed and given use immunity for anything that you told to them. They would then make arrests or get warrants leading to arrests. If there were productive arrests from your information, you would be given credit. You might be given a lot of credit if you further testified against perpetrators. Bear in mind that all of this is predicated on acceptance of responsibility for the crime for which you were charged.

Second, although defense counsel did not mention the plan to have Jenkins work with law enforcement during the beginning of the plea hearing, he referenced it at

the end, telling the trial court that Jenkins "has some people that he needs to talk to that may influence your judgment on sentencing, so I'm asking for about 45 days."

¶ 27. Third, defense counsel made numerous calls on Jenkins's behalf, attempting to arrange for opportunities for Jenkins to work with both state and federal law enforcement. Defense counsel's statements at sentencing make clear that it was his expectation that Jenkins was going to have a chance to work with law enforcement, and that defense counsel did everything he could reasonably do to make that happen. Indeed, defense counsel asked for an adjournment to continue to try to meet Jenkins's expectation, which reinforces Jenkins's assertion that cooperating with law enforcement was a key component to his decision to plead guilty.

¶ 28. These facts all support Jenkins's presentence assertion that he believed, both before pleading guilty and afterward, that he would have an opportunity to work with law enforcement if he accepted responsibility for the crime. Even if Jenkins was wrong —that the State and defense counsel never intended to imply that there was a guarantee—it is nonetheless a fair and just reason to allow Jenkins to withdraw his plea. *See Manke*, 230 Wis. 2d at 429 ("Under the fair and just reason standard, a plea may be withdrawn if the defendant misunderstands the consequences of that plea.").

¶ 29. The State disagrees. It notes that Jenkins did not mention the existence of "this alleged additional aspect of the plea agreement despite the invitation to do so" at sentencing. The State notes that Jenkins was in fact given access to two Milwaukee police detectives

after he pled guilty, and shared with them some of his information. The State questions Jenkins's understanding of the agreement:

> Mr. Jenkins told the court that the agreement between himself and the State consisted of his guilty plea in exchange for the State's recommendation of a 24/24 sentence; the State shared this view. No misunderstanding there. Jenkins expected as a result of his plea that he would be given the opportunity to cooperate with State authorities. He *was* given [that opportunity]. Unfortunately, they could do nothing useful with the information he gave them because of his incarcerated status; nevertheless, they attempted to put him in touch with federal authorities, unsuccessfully as it turns out. However, all that matters for the purposes of this argument is that Jenkins expected to be put in touch with State law enforcement officers and he was.

¶ 30. The State suggests that this court should bind Jenkins to a strict interpretation of the letter defense counsel sent him, and conclude that because Jenkins spoke with two officers, his expectations should have been satisfied. If the issue before this court were an alleged breach of the plea agreement raised after sentencing, our analysis might require such a strict analysis of every word in defense counsel's letter. But given the applicable standard for pre-sentence motions for plea withdrawal, that courts must take "a liberal, rather than a rigid, view of the reasons given for plea withdrawal," *see Bollig*, 232 Wis. 2d 561, ¶ 29, we conclude that the State asks too much. The letter suggested that if Jenkins pled guilty, he would have an opportunity to work with law enforcement and benefit his case. The letter focused on the requirement that Jenkins plead guilty, and did not mention what would happen if law enforcement chose not to work with

Jenkins or evaluate the likelihood of Jenkins's information leading to arrests. Jenkins's belief that he would be working with law enforcement was not unreasonable under the circumstances, and provided a fair and just reason for plea withdrawal.

## B. Prejudice

¶ 31. Our conclusion that Jenkins had a fair and just reason for plea withdrawal does not end our inquiry. We must consider whether the State would be substantially prejudiced by the plea withdrawal. *See id.*, ¶ 28. The trial court never considered prejudice, but we note that neither at the trial court nor on appeal does the State suggest that it would have been prejudiced in any way if the plea withdrawal had been allowed. In the absence of even an assertion of prejudice, we conclude that the trial court erroneously exercised its discretion when it denied Jenkins's pre-sentencing motion to withdraw his plea. *See State v. Shanks*, 152 Wis. 2d 284, 292, 448 N.W.2d 264 (Ct. App. 1989) (concluding defendant should have been allowed to withdraw plea where he proved a fair and just reason and the State made no argument that it would be substantially prejudiced by the defendant's plea withdrawal). Therefore, we reverse and remand for further proceedings.

*By the Court.*—Judgment and orders reversed and cause remanded for further proceedings.

¶ 32. FINE, J. (*dissenting*). The Majority acknowledges that a decision whether to permit a defendant who has pled guilty to withdraw his guilty plea and avoid sentencing is vested in the trial court's discretion. "A trial court's discretionary decision to deny plea withdrawal will be upheld on appeal when the court

'reached a reasonable conclusion based on the proper legal standard and a logical interpretation of the facts.' " *State v. Leitner*, 2001 WI App 172, ¶ 24, 247 Wis. 2d 195, 207–208, 633 N.W.2d 207, 212–213 (quoted source omitted). Here, the trial court was meticulous in the exercise of its discretion. The Majority, however, in my view, ignores this proper standard of review and substitutes what it believes *should* have been done based on its analysis of the very facts upon which the trial court relied.

¶ 33. As can be seen from the Majority's extensive recitation of the background leading to this appeal, Barry M. Jenkins had a hope, an "expectation" if you will, of what *might* happen if he was able to persuade the authorities that he had information sufficiently valuable to them for him to get some *quid pro quo* consideration. As the trial court pointed out in its lucid written decision denying Jenkins's motion for postconviction relief, however, this perception of a possible *quid pro quo* consideration did not result from anything that his lawyer or the State did to mislead him—there was scrupulous adherence to the plea bargain. Thus, the trial court explained in its written decision:

> Here, there was not a "genuine misunderstanding" of the plea's consequences; the consequences of the plea were that the State would make a recommendation of 24 months initial confinement and 24 months extended supervision, and the court would fashion a sentence based on the seriousness of the offense, the defendant's character, and the need for community protection. The defendant may have thought that a more favorable sentence would have been imposed had he been able to connect with federal law enforcement authorities who would have appeared or spoken on his behalf, but this was not a part of the plea agreement. Consequently, there was no misunderstanding about the conse-

quences *of the plea.* For these reasons, there was not a fair and just reason to withdraw the plea.

(Emphasis by the trial court.) Indeed, the Majority concedes that here, unlike the situation in *State v. Manke,* 230 Wis. 2d 421, 430, 602 N.W.2d 139, 144 (Ct. App. 1999), the defendant did *not* base his alleged "misunderstanding" on misleading advice from his lawyer, by asserting in ¶ 24: "We do not see this as an ineffective assistance of counsel case, but instead a case that can be decided based on Jenkins's misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement."

¶ 34. In my view, the Majority is setting new ground and creating new law by holding that what the trial court has found to be an unjustified and objectively unreasonable misperception by a defendant permits pre-sentence withdrawal of that defendant's plea. Significantly, the defendant has not shown beyond mere assertion either:

- that he is innocent of the charges, or, at least, that he has a reasonable chance of acquittal at a trial so that it would be "fair" to permit him to withdraw his guilty plea, or
- that the authorities lured him into pleading guilty.

The Majority finesses the first aspect, and its extensive recitation of the facts negates any inference that would support a finding on the second. Indeed, the trial court found that Jenkins was not misled by anyone. Further, despite Jenkins's sporadic assertions that he was misidentified, his appellate brief concedes that "[d]uring the plea colloquy, the defendant told the court that he delivered the heroin to the undercover officers." Thus, there is ample support for the trial court's finding that Jenkins's post-plea contentions were not "credible in

light of his own earlier words." Indeed, Jenkins even asserts that getting credit at sentencing was not the prime reason he wanted to work with law enforcement: "It's not too much about the time, you know. It's not much time. I've done, as you can read, I've done time before. My point is just to get some changes, you know, with myself and help." Majority, ¶ 12. Earlier in his colloquy with the trial court, Jenkins explained what apparently he meant by "help": "[F]rom much of the troubles I've caused and the stress we place on Milwaukee, the police department here in this state, and sort of abolish this heroin that's flowing into the states and guns and everything else, so sort of just kind of get myself cleared up and get back on track." *Ibid.* Clearly, the trial court did not believe Jenkins's sentencing-conversion expressions of concern for society and "stress" on the "police department."

¶ 35. Until now, it has been the law in this state that a defendant seeking to withdraw his plea must establish that he or she would have gone to trial—mere conclusory allegations are not enough. *State v. Thornton*, 2002 WI App 294, ¶ 27, 259 Wis. 2d 157, 178–179, 656 N.W.2d 45, 55. Here, we do not even have a "conclusory" allegation that Jenkins would have gone to trial. In my view, the trial court appropriately exercised its discretion, and I would affirm for that reason. Accordingly, I respectfully dissent.

¶ 36. I also want to reiterate what I have long contended, and, sadly, this case, though not through any fault of the Majority (because the case came to us after having been plea-bargained), is but another example: the plea-bargaining quadrille is an insult, not an enhancement, to justice. It is also, in my view, a tawdry auction, where both defendants and often the State (when it seeks to extort guilty pleas by the threat to

up-the-ante if the defendant does not cave) seek what I see as an attempt to "game" justice—as in the typical auction, there are bids, reserves, and, ultimately, sales. As former federal judge Herbert J. Stern has written, "The present system has the flavor of a fish market. It ought to be hosed down." Herbert J. Stern, Book Review, 82 COLUM. L. REV. 1275, 1283 (1982) (reviewing ABRAHAM S. GOLDSTEIN, THE PASSIVE JUDICIARY (1981)).